United States District Court
Southern District of Texas
**ENTERED**
January 04, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| NUCOR CORPORATION d/b/a Vulcraft – Texas, | § | |
| | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:20-cv-00345 |
| | § | |
| AMADOR REQUENEZ d/b/a Valley Welding Service, | § | |
| | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |

## OPINION AND ORDER

The Court now considers nineteen briefs: "Defendant Amador Requenez d/b/a Valley Welding Services's Motion to Exclude Expert Testimony,"[1] and Plaintiff's response.[2] The Court also considers Plaintiff's motion to exclude the "Opinions, Testimony, and Report of David Day, P.E.,"[3] of Roberto Quintero,[4] of "Raba Kistner, Inc. and its Employees and Agents,"[5] and of Simon Solorio,[6] and Defendant's two timely response briefs,[7] and Plaintiff's two timely reply briefs.[8] The Court also considers "Plaintiff/Counterclaim Defendant Nucor Corporation d/b/a Vulcraft – Texas's Opposed Motion to Strike Sham Affidavit and Errata Sheet of Defendant/Counterclaim Plaintiff Amador Requenez,"[9] Defendant's response,[10] Plaintiff's reply,[11] and Plaintiff's amended

---

[1] Dkt. No. 51.
[2] Dkt. No. 59.
[3] Dkt. No. 46.
[4] Dkt. No. 47.
[5] Dkt. No. 48.
[6] Dkt. No. 49.
[7] Dkt. Nos. 62–63.
[8] Dkt. Nos. 67, 69.
[9] Dkt. No. 66.
[10] Dkt. No. 70.
[11] Dkt. No. 71.

reply.[12]  The Court also considers "Plaintiff/Counterclaim Defendant Nucor Corporation d/b/a Vulcraft – Texas's Opposed Motion for Summary Judgment Pursuant to Rule 56, Federal Rules of Civil Procedure,"[13] Defendant's response,[14] and Plaintiff's reply.[15] Lastly, the Court considers "Defendant Amador Requenez d/b/a Valley Welding Services's Motion to Realign the Parties"[16] and Plaintiff's response.[17]

In short, both sides seek to exclude significant portions of the opposing side's evidence, Plaintiff Nucor Corporation d/b/a Vulcraft – Texas (Vulcraft) asserts that it is entitled to summary judgment on its claims, and Defendant Amador Requenez d/b/a Valley Welding Services (Valley Welding) asserts that it should be designated the plaintiff for trial. In other orders, the Court denied Valley Welding's motion to exclude certain of Plaintiff's evidence[18] and dismissed Plaintiff's claims against Defendants D. Wilson Construction Company, Great American Insurance Company, and Great American Insurance Company of New York pursuant to those parties' stipulation.[19]

The Court briefly notes that at least two of Defendant's briefs lack numbered paragraphs,[20] even though Defendant is well-aware of the Federal Rules of Civil Procedure's requirements to include numbered paragraphs.[21] The Court cautions Defendant that *all* submissions must consistently contain numbered paragraphs. The Court also briefly notes that Plaintiff Nucor Corporation d/b/a Vulcraft – Texas's reply brief concerning David Day and Roberto Quintero does

---

[12] Dkt. No. 72.
[13] Dkt. No. 45.
[14] Dkt. No. 64.
[15] Dkt. No. 68
[16] Dkt. No. 52.
[17] Dkt. No. 57.
[18] Dkt. No. 61.
[19] Dkt. No. 65.
[20] Dkt. Nos. 63–64.
[21] *Compare* Dkt. No. 44, *with* Dkt. No. 53. *See* Dkt. No. 61 at 1–2 (opinion commenting on the numbered paragraph requirement).

no more than "reiterat[e]" Plaintiff's other briefs.[22]  The Court admonishes Plaintiff that reply briefs that say "read my other briefs" are unhelpful and crowd the Court's docket.

Additionally, the Court notes that Plaintiff filed its motion to strike on November 8, 2021,[23] after the Court's October 14th deadline for pretrial motions.[24]  Plaintiff's motion to strike seeks to strike an affidavit and deposition errata both signed on November 1st and relied upon in Defendant's November 4th response brief to summary judgment.[25]  The Court treats the motion as timely under Federal Rule of Civil Procedure 6(b)(1)(B) because it obviously could not have been filed by the October 14th deadline and was filed mere days after Defendant's affidavit and deposition errata first came to Plaintiff's attention.  Defendant filed a timely response on November 24th.[26]  Plaintiff's initial reply was due and timely filed on December 1st.[27]  Plaintiff's untimely amended December 2nd reply brief was filed to correct Plaintiff's "misstatement" in his original reply regarding Defendant's discovery requests.[28]  However, Plaintiff neither sought nor obtained the Court's leave to file an untimely amended reply brief, and the Court does not sua sponte find "excusable neglect" under Rule 6(b)(1)(B) to permit Plaintiff's late reply to correct minor details about the parties' discovery that were misstated because of Plaintiff's counsel's own failures.[29]  Accordingly, the Court **STRIKES** Plaintiff's amended reply brief.[30]

The Court considers the motions, record, and relevant authorities and its holdings are summarized in the conclusion below.

---

[22] Dkt. No. 69 at 1.
[23] Dkt. No. 66.
[24] Dkt. No. 24 at 3.
[25] *See* Dkt. No. 66 at 1.
[26] Dkt. No. 70.
[27] Dkt. No. 71; *see* LR7.4.E.
[28] Dkt. No. 72 at 1 n.1.
[29] *See id.* ("Valley Welding's counsel emailed interrogatories and document requests to Vulcraft's previous attorney-in-Charge. Current Attorney-in-Charge Ernest Beaton, was unaware of the discovery requests at the time he filed the Reply Brief.").
[30] Dkt. No. 72.

## I.   BACKGROUND AND PROCEDURAL HISTORY

This case is a contract dispute. Plaintiff Vulcraft "is a manufacturer of steel joists and deck with an office and manufacturing plant located in Grapeland, Texas."[31] Defendant Valley Welding "operates a steel joist fabrication and erection sole proprietorship doing business as Valley Welding Service."[32] On an unknown date, the City of Pharr, Texas, and former Defendant D. Wilson Construction Company (D. Wilson) "entered a prime contract for the construction of the Pharr Aquatic Facility."[33] D. Wilson then subcontracted with Defendant Valley Welding "for the supply of certain steel joists and deck" to the Pharr Aquatic Facility construction project.[34] In November 2019, Valley Welding and Vulcraft communicated and agreed upon a "Purchase Order and Quote Confirmation" whereby Vulcraft fabricated "steel joists and deck" to be used in the construction of the Pharr Aquatic Facility.[35] In January 2020, D. Wilson and Valley Welding contracted for Valley Welding "to install and construct joists and a deck" for the Pharr Aquatic Facility.[36] In March 2020, D. Wilson "promised to pay for material supply by Vulcraft to the [construction project] by joint check made payable to Valley Welding and Vulcraft."[37] In July 2020, Vulcraft finished fabricating the steel joists and deck and made its final delivery to the construction location.[38] After an inspection in early July, the project structural engineer ascertained that the delivered steel joists and deck were riddled with "welding defects and deficiencies" and did not meet the construction project specifications.[39] On July 16, 2020, D. Wilson transmitted a letter to Valley Welding that asserted that Valley Welding had delivered nonconforming materials

---

[31] Dkt. No. 45 at 4, ¶ 7 (citing Dkt. No. 45-7 at 1, ¶ 2).
[32] Id. at 4, ¶ 8 (citing Dkt. No. 45-1 at 20:18–21:9).
[33] Dkt. No. 1 at 3, ¶ 13.
[34] Id. ¶ 15.
[35] Id. at 3–4, ¶¶ 16–21.
[36] Dkt. No. 55 at 1, ¶ 1.
[37] Dkt. No. 1 at 4, ¶ 19.
[38] Id. ¶ 21.
[39] Dkt. No. 13 at 7, ¶ 55.

and demanded Valley Welding's cure.[40] On July 17th, a representative of Vulcraft transmitted a letter to Valley Welding that disagreed with Valley Welding's assertion that Vulcraft had delivered nonconforming materials and asserted that Vulcraft did comply with the terms of its November 2019 Purchase Order.[41] Subsequently, Valley Welding "incurred a total of $316,000 in rewarding [rewelding] the [Vulcraft-]manufactured steel joists."[42]

Between August and October 2020, D. Wilson paid Vulcraft $277,005.44, but Vulcraft asserted at the time of its October 29, 2020 complaint that it is owed "a past due amount remaining . . . of $594,957.56."[43] Plaintiff Vulcraft initially asserted numerous causes of action against various Defendants, but subsequently dismissed all of its claims against all Defendants except Valley Welding[44] and new information indicates that Vulcraft has been paid all of the principal balance it sought and now seeks only late fees and attorney fees.[45]

After service of process,[46] Valley Welding timely[47] answered and counterclaimed.[48] Twenty days later, pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), Valley Welding filed his "First Amended Answer and Counter-Claim."[49] While this document remains Valley Welding's "live answer to Vulcraft's complaint,"[50] the Court subsequently granted Valley Welding leave to file his live "Corrected . . . Second Amended Counter-Claim."[51] Therein, Counter-Plaintiff Valley Welding asserts a breach of contract claim against Vulcraft for its

---

[40] Dkt. No. 13-3.
[41] Dkt. No. 13-5.
[42] Dkt. No. 39 at 4, ¶ 10.
[43] Dkt. No. 1 at 5, ¶ 26.
[44] Dkt. No. 60.
[45] Dkt. No. 52 at 2, ¶ 3.
[46] Dkt. Nos. 7–8.
[47] *See* FED. R. CIV. P. 12(a).
[48] Dkt. No. 10.
[49] Dkt. No. 13.
[50] Dkt. No. 54 at 9.
[51] Dkt. Nos. 54–55.

allegedly nonconforming steel joists,[52] and claims that Vulcraft breached its contract and express warranty in failing to construct steel joists according to Steel Joist Institute weld standards.[53]

The parties filed their joint discovery/case management plan on January 4, 2021,[54] and the Court issued its current scheduling order on January 7th.[55] The scheduling order provided an October 14th deadline to file pretrial motions.[56] On October 14th, the parties filed nine motions,[57] and Plaintiff filed its aforementioned motion to strike on November 8th.[58] The Court turns to their analysis, beginning with Plaintiff's motions to exclude evidence because they were filed earlier, then Defendant's motion to exclude evidence, then Plaintiff's motion to strike Defendant's affidavit and errata sheet because it is necessary to resolving issues in Plaintiff's motion for summary judgment,[59] then Plaintiff's motion for summary judgment considering the available evidence, and finally Defendant's motion to realign the parties.

## II. PLAINTIFF VULCRAFT'S MOTIONS TO EXCLUDE EVIDENCE

### a. Legal Standard

"[T]he Federal Rules of Evidence control the admission of expert testimony."[60] The Rules and judicial scrutiny extend to all experts, whether scientific or otherwise.[61] When an expert's "factual basis, data, principles, methods, or their application" are sufficiently called into question,[62] the Court must undertake a "preliminary assessment of whether the reasoning or methodology

---

[52] Dkt. No. 55 at 8, ¶ 19.
[53] *Id.* at 8–9, §§ B–C.
[54] Dkt. No. 23.
[55] Dkt. No. 24.
[56] *Id.* at 4.
[57] Dkt. Nos. 45–53.
[58] Dkt. No. 66.
[59] *See infra* note 420.
[60] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002).
[61] *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 580–81 (5th Cir. 2001) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).
[62] *Rodriguez*, 242 F.3d at 581 (quotation omitted).

underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."[63] The Court must first determine, under Federal Rules of Evidence 104(a) and 402, that the expert's proposed testimony is relevant and would assist with determining a fact at issue.[64] Evidence that is not both is not admissible.[65] "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful. Similarly, low probative value, or a total lack of it, will render proposed expert testimony unhelpful and, therefore, inadmissible under Federal Rule of Evidence 702."[66] The Court scrutinizes proposed expert testimony more searchingly than lay witness testimony for its pertinency and potential prejudice.[67]

Additionally, "[u]nder the Rules[,] the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[68] "Experts qualified by knowledge, skill, experience, training or education may present opinion testimony to the jury"[69]

---

[63] *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592–93 (1993).

[64] *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015) (quoting *Bocanegra v. Vicmar Servs.*, 320 F.3d 581, 584 (5th Cir. 2003)) (rejecting conclusory testimony as irrelevant); *cf. United States v. Gluk*, 831 F.3d 608, 615 (5th Cir. 2016) (reversing the exclusion of SEC investigators' evidence); *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (alteration and quotation omitted) ("The contradictions coupled with the lack of support for the statements take them out of the realm of substantive evidence. In the context of admissibility of expert testimony, this court has noted that if an opinion is fundamentally unsupported, then it offers no expert assistance to the jury."); *Pedraza v. Jones*, 71 F.3d 194, 197 (5th Cir. 1995) (cleaned up) ("To qualify as an expert, the witness's testimony must both rest on a reliable foundation and be relevant to the task at hand.").

[65] *Perez v. Tex. Dep't of Crim. Just., Inst. Div.*, 395 F.3d 206, 210 (5th Cir. 2004) (citing FED. R. EVID. 401).

[66] 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE, § 702.02[5] (Mark S. Brodin, ed., 2d ed. 1997) (cleaned up), *quoted in Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 591 (1993); *see EEOC v. U-Haul Co. of Tex.*, No. 4:04-cv-3788, 2005 WL 2860987, at *2 (S.D. Tex. Nov. 1, 2005) (Hittner, J.) (quoting *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000)) ("Expert testimony assists the trier-of-fact when the expert's knowledge and experience on a relevant issue are beyond that of the average juror and the testimony helps the trier-of fact understand the evidence or determine a fact issue. When the jury is equally competent to form an opinion about the ultimate fact issues or the expert's testimony is within the common knowledge of the jury, the trial court should exclude the expert's testimony.").

[67] *Rule 702 of the Federal Rules of Evidence Is Sound; It Should not be Amended*, 138 F.R.D. 631, 632 (1991) (Weinstein, J.), *quoted in Daubert*, 509 U.S. at 595. *But see Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case . . . where a district judge sits as the trier of fact in place of a jury.").

[68] *Daubert*, 509 U.S. at 589; *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quotation omitted) (holding the Rules "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand").

[69] *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quotation omitted). *But see Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 623–24 (5th Cir. 2018) (cleaned up) ("Rule 702 does not mandate that an expert be highly

only if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[70] The proponent of the proffered expert testimony "must prove by a preponderance of the evidence that the testimony is reliable" and cannot rest on generic assurances.[71] Under the first element, "the existence of sufficient facts . . . is in all instances mandatory."[72] Unsubstantiated factual assertions will bar expert testimony,[73] as will "altered facts and speculation designed to bolster [the proponent's] position."[74] Expert opinions that are unsupported, self-contradicted, or assumptive are to be excluded.[75] However, the proponent "need not prove the testimony is factually correct, but rather need only prove by a preponderance of the evidence the testimony is reliable"[76] and the Court should "approach its inquiry with the proper deference to the jury's role as the arbiter of disputes between conflicting opinions."[77] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[78]

---

qualified in order to testify about a given issue. Although an expert's qualifications may be less-than-sterling, she may still be certified. This is because differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.").

[70] *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (quoting FED. R. EVID. 702).

[71] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

[72] *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).

[73] *Id.* at 319 & n.4.

[74] *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996); *see Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013) (citing *MGM Well Servs. v. Mega Lift Sys.*, No. 4:05-cv-1634, 2007 WL 150606, at *4 (S.D. Tex. Jan. 16, 2007) (Atlas, J.) ("Rather than conduct and report the results of critical, independent analysis, it appears that Alworth relied heavily, if not exclusively, on what Bartley told him. His expert report is at best an effort to synthesize Defendant's positions and present them summarily as an expert opinion.")) ("Although in forming an independent opinion an expert can rely on information provided by a party's attorney, an expert cannot forgo his own independent analysis and rely exclusively on what an interested party tells him.").

[75] *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005).

[76] *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).

[77] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

[78] *United States v. 14.38 Acres of Land, more or less Situated in Leflore Cnty.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo*, 826 F.2d at 422); *see* FED. R. EVID. 702 advisory committee's note to 2000 amendment ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.").

Indeed, the Fifth Circuit has cautioned against transforming a motion to exclude an expert into a trial on the merits, because the factfinder may be entitled to accept or reject an expert's testimony *including* by judging whether the predicate facts on which an expert relied are accurate.[79] In short, experts may rely on disputed facts,[80] but not unsubstantiated assertions. Cross-examination and presentation of competing evidence are traditionally sufficient to challenge an expert opinion, rather than exclusion for inadmissibility.[81] "It is the role of the adversarial system, not the court, to highlight weak evidence."[82]

Under the second and third elements for assessing expert evidence, "expert testimony 'must be reliable at each and every step or else it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*.'"[83] "Under *Daubert,* 'any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology."[84] To test reliability, the Court assesses the intellectual rigor of the proposed expert testimony,[85] which must

---

[79] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002).

[80] *Metro Hosp. Partners, Ltd. v. Lexington Ins. Co.*, No. 4:15-cv-1307, 2017 WL 3142444, at *6 (S.D. Tex. July 25, 2017) (Rosenthal, C.J.) (citing *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (per curiam) and *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004)); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010) (citing *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) and *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002)) ("[I]t is not the district court's role under *Daubert* to evaluate the correctness of facts underlying an expert's testimony. Questions about what facts are most relevant or reliable to calculating a reasonable royalty are for the jury. The jury was entitled to hear the expert testimony and decide for itself what to accept or reject."), *aff'd*, 564 U.S. 91 (2011).

[81] *See MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 852 (5th Cir. 2015) (quoting *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 596 (1993)); *see 14.38 Acres of Land*, 80 F.3d at 1078 ("[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.").

[82] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

[83] *In re Pool Prod. Distrib. Mkt. Antitrust Litig.*, 166 F. Supp. 3d 654, 662 (E.D. La. 2016) (quoting *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007)).

[84] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 278 n.10 (5th Cir. 1998) (omission in original) (emphasis deleted) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)).

[85] *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

be validated by an independent and objective source beyond the expert's assurances,[86] and the Court "should ensure that the [expert] opinion comports with applicable professional standards outside the courtroom and that it will have a reliable basis in the knowledge and experience of [the] discipline,"[87] but an expert report or opinion need not be in lockstep with the common or prevailing standard to be admissible.[88] Similarly, the Court should exclude expert evidence if the witness is not qualified in a particular field or subject,[89] but an expert witness need not be highly credentialed or qualified to offer an expert opinion to the factfinder.[90] The Court may "conclude that there is simply too great an analytical gap between the data and the opinion proffered" to be admissible,[91] but there is no definite formula for determining whether expert testimony is reliable or unreliable "and the court must judge admissibility based on the particular facts of the case."[92] "Certain more specific factors, such as testing, peer review, error rates, and 'acceptability' in the relevant scientific community . . . might prove helpful in determining the reliability of a particular

---

[86] *Brown v. Ill. Cent. R.R.*, 705 F.3d 531, 536 (5th Cir. 2013) (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)); *see Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (alteration and quotation omitted) ("But the existence of sufficient facts and a reliable methodology is in all instances mandatory. Without more than credentials and a subjective opinion, an expert's testimony that "it is so" is not admissible.").

[87] *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997) (second alteration in original) (quotation omitted); *see McManaway v. KBR, Inc.*, 852 F.3d 444, 449 (5th Cir. 2017) (cleaned up) (holding that courts "look to the basis of the expert's opinion, and not the bare opinion alone. A claim cannot stand or fall on the mere *ipse dixit* of a credentialed witness."); *cf. Mayor of City of Phila. v. Educ. Equal. League*, 415 U.S. 605, 621 (1974) ("[T]he District Court's concern for the smallness of the sample presented by the 13-member Panel was also well founded."); *accord Conlay v. Baylor Coll. of Med.*, 688 F. Supp. 2d 586, 595 (S.D. Tex. 2010) (Smith, J.) (collecting cases).

[88] *Whitehouse Hotel LP v. Comm'r*, 615 F.3d 321, 332 (5th Cir. 2010) (rejecting the argument that compliance with uniform published professional standards goes to admissibility rather than credibility); *see Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 588 (1993) ("Nothing in the text of this Rule establishes 'general acceptance' as an absolute prerequisite to admissibility."); *Hardy v. United States*, 141 Fed. Cl. 1, 32 (2018) ("The Yellow Book [Uniform Appraisal Standards for Federal Land Acquisitions] applies only to appraisers hired by the federal government for condemnation purposes; it is not mandatory with respect to appraisers not hired by the government.").

[89] *See Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (affirming exclusion of expert evidence because "Moore is not a tire expert. He has never been employed in any capacity dealing with the design or manufacture of tires. He has never published any articles regarding tires nor has he ever examined a tire professionally prior to this litigation. His only experience with tires is as a consumer.").

[90] *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199–200 (5th Cir. 2016).

[91] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see id.* ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.")

[92] *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 379 (5th Cir. 2010).

scientific 'theory or technique.'"[93] Reliance on studies that do not support a contention, cherry-picked data, or a dubious methodology may be grounds to reject expert testimony.[94] The test is, at bottom, "a flexible one,"[95] so "[t]rial judges retain 'broad latitude' both in deciding how to determine whether an expert's testimony is reliable, and ultimately, whether the testimony is, in fact, reliable."[96]

### b. Analysis

#### 1. David Day, P.E.

In Plaintiff's first motion to exclude, Plaintiff Vulcraft first argues that the Court should exclude the opinions, testimony, and report of David Day, P.E. because Mr. Day purports to offer evidence that "the steel joists supplied by Vulcraft do not conform to the AWS welding standards," but the American Welding Society (AWS) standards are irrelevant to this action because they are materially distinct from the Steel Joist Institute (SJI) standards that are required by the parties' agreement.[97] Defendant Valley Welding simply responds that David Day's opinions are relevant because, in July 2020, "he conducted an inspection of the Vulcraft's steel joists to determine whether they were defective and met SJI weld standards."[98] The Court agrees with Defendant. Mr. Day avers that he based his opinions partly on his "personal observations of certain steel joists delivered by Vulcraft at the job site," from which he concluded that the welding defects "would

---

[93] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 593–94 (1993)).
[94] *Burst v. Shell Oil Co.*, 650 F. App'x 170, 174 (5th Cir. 2016) (per curiam).
[95] *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 594 (1993).
[96] *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006) (quoting *Kumho Tire Co.*, 526 U.S. at 142); *accord St. Martin v. Mobil Expl. & Producing U.S. Inc.*, 224 F.3d 402, 406 (5th Cir. 2000) (quoting *Watkins v. Telsmith Inc.*, 121 F.3d 984, 988 (5th Cir. 1997)) ("District courts enjoy wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will not be disturbed on appeal unless manifestly erroneous.").
[97] Dkt. No. 46 at 10–11, ¶¶ 44–46.
[98] Dkt. No. 63 at 11.

disqualify the weld under SJI standards and AWS standards."[99] Mr. Day's opinion is therefore relevant to the issue of whether Vulcraft's steel joists conformed to SJI standards.

Plaintiff next argues that, during David Day's inspection of the joists, he "did not have Vulcraft's joist weld plots" which renders his inspection fatally unreliable.[100] One of Plaintiff Vulcraft's witnesses, Adam Kushner (whom Defendant Valley Welding has moved to exclude[101]), avers that,

> [i]n order to inspect steel joists under SJI standards, the weld inspector must know the required design lengths of the welds . . . . If an inspector does not know this information, they cannot know whether a defect in the weld can be disregarded because it is outside the design length of the weld or contained in a tack weld. The required design length of a weld is determined from the joist manufacturer's weld plots, which show the specific required length, width, and depth of each weld on the joist.[102]

Plaintiff relies on this evidence to argue that "Mr. Day could not know if the welds passed or failed SJI weld standards."[103] In response,[104] Defendant points to Mr. Day's averment that he "did not need the weld plots from the Vulcraft construction drawings to come to the conclusion that the welds on the steel joists that [he] inspected did not meet SJI weld standards."[105] (Moreover, David Day did not testify that he did not have the joist weld plots; he actually testified that he must have had them but cannot distinctly remember whether he did.[106]) In any event, no party points the Court to objective SJI standards that declare, one way or the other, whether weld plots are strictly necessary to draw a conclusion about the sufficiency of a weld under SJI standards. The Court is

---

[99] Dkt. No. 63-4 at 3–4, ¶¶ 3–4.
[100] Dkt. No. 46 at 13, ¶ 50 (citing Dkt. No. 46-3 at 3–4, ¶ 7).
[101] Dkt. No. 51.
[102] Dkt. No. 46-3 at 3–4, ¶ 7.
[103] Dkt. No. 46 at 13, ¶ 50.
[104] See Dkt. No. 63 at 12–13.
[105] Dkt. No. 63-4 at 4, ¶ 4.
[106] Dkt. No. 59-9 at 13, 52:6–7 ("I don't remember. I mean, I'm sure I did, but I can't say that for sure. I don't remember."); id. at 15, 60:8–10 ("I can't remember. I mean, it's been a long time. I want to say yes, but I -- I can't recall. It's been too long.").

therefore faced with two competing weld experts: in Adam Kushner's opinion, weld plots *are* necessary to draw conclusions, but in David Day's opinion, they are not. The Court cannot determine from this evidence that David Day's opinion is so far afield as to be unsubstantiated or assumptive, rather than simply an issue for cross-examination.[107]

Plaintiff next argues that David Day should be excluded because he improperly reviewed photographs.[108] The Court first notes that Mr. Day avers that he did inspect the joists in person at the job site.[109] Additionally, although Mr. Day admits that the "proper protocol . . . for inspecting a weld is to do it in person[,] not looking at photographs," Mr. Day also testified that an incomplete fusion in one joist weld is "clearly obvious from the picture."[110] The Court does not agree that Mr. Day's reliance in part on photographs of the joists renders his opinion inadmissibly unreliable.

Plaintiff last argues that the Court should exclude David Day's opinion because he exclusively relies on the opinions of others without any effort to independently verify the information.[111] Mr. Day admitted during his deposition that he did not independently verify the reports upon which his opinion partly relies beyond reviewing the reports and photographs.[112] However, again, Mr. Day partly based his "opinions on [his] personal observations of certain steel joists delivered by Vulcraft at the job site."[113] Therefore, Mr. Day's opinions are neither a mere *ipse dixit* nor solely based on what others told him.[114] Mr. Day's opinions are partly grounded in his own observations and experience, which the Court concludes constitute sufficient facts and

---

[107] *See supra* notes 79–80.
[108] Dkt. No. 46 at 13, ¶ 51.
[109] Dkt. No. 63-4 at 3, ¶ 3.
[110] Dkt. No. 46-2 at 58:18–59:5.
[111] Dkt. No. 46 at 14, ¶ 53.
[112] Dkt. No. 46-2 at 69:8–23.
[113] Dkt. No. 63-4 at 3, ¶ 3.
[114] *See* Dkt. No. 46 at 14, ¶ 53 (citing *MGM Well Servs. v. Mega Lift Sys.*, No. 4:05-cv-1634, 2007 WL 150606, at *4 (S.D. Tex. Jan. 16, 2007) (Atlas, J.)).

data to be admissible.[115]  The Court notes that Plaintiff obliquely argues that Mr. Day's personal inspection was cursory and insufficient,[116] but the Court holds that how extensive an inspection was necessary is for the jury to determine.  The Court **DENIES** Plaintiff's motion to exclude the opinions, testimony, and report of David Day.[117]

The Court turns to Plaintiff's second motion to exclude.

### 2. *Roberto Quintero*

Plaintiff Vulcraft first argues that the Court should exclude Defendant's witness Roberto Quintero because his reports repeatedly reference the irrelevant AWS welding standards instead of the relevant SJI welding standards.[118] But as Defendant Valley Welding points out,[119] Mr. Quintero was called upon to inspect the relevant welds under both AWS and SJI standards,[120] and his reports reference both welding standards and whether the inspected welds comply with both standards.[121] The Court therefore does not agree that Roberto Quintero's opinions are rendered irrelevant because they address both welding standards.

Plaintiff next argues that Roberto Quintero failed to use "the joist weld plots to determine the required design length of the weld," which are necessary to conduct a proper inspection.[122] This is simply a false assertion. Mr. Quintero testified that he had hard copies of the weld plots on site with him at the time of his inspection.[123] Mr. Quintero also averred that he "had the weld plots

---

[115] *See supra* note 70.
[116] *See* Dkt. No. 46 at 6, ¶¶ 22–25.
[117] Dkt. No. 46.
[118] Dkt. No. 47 at 10, ¶¶ 31–32.
[119] Dkt. No. 63 at 4.
[120] Dkt. No. 59-9 at 5–6, 20:13–21:23.
[121] *See, e.g.*, Dkt. No. 47-2 at 1–5.
[122] Dkt. No. 47 at 12, ¶ 36 (citing Dkt. No. 47-3 at 3–4, ¶ 7).
[123] Dkt. No. 59-9 at 17, 68:4–7.

contained in the the [sic] Vulcraft construction drawings when [he] performed the inspections of the steel joists manufactured by Vulcraft."[124]

Plaintiff further argues that Roberto Quintero conflated the AWS and SJI standards in his report and reached conclusions which are "wholly implausible," so Mr. Quintero's methodology could not be reliable.[125]  Plaintiff specifically argues that Mr. Quintero never identified a weld in his report "that was acceptable under SJI but failed under AWS," but that some tack welds must have failed to meet AWS standards while meeting SJI standards.[126] However, as Plaintiff's own expert explains, a tack weld is merely temporary, equivalent to glue, used to hold joists together "until the final structural welds are made."[127] It is therefore unclear why Mr. Quintero would ever inspect or evaluate a tack weld.[128] Indeed, having reviewed Mr. Quintero's report, the Court could not identify any inspection of a tack weld (and Plaintiff does not point to any specific inspection), but Mr. Quintero did inspect numerous "[f]illet and CJP [complete joint penetration] welds."[129] Plaintiff's assertion that "[a]ny properly performed weld inspection of a joist under both AWS and SJI weld standards would necessarily identify tack welds that fail under an AWS standard, but pass under an SJI standard" may be correct as far as that assertion goes,[130] but irrelevant for present purposes because Plaintiff has not identified a fatal defect in Roberto Quintero's inspection reports in which Mr. Quintero necessarily committed a methodological error by opining that a tack weld was sufficient under both AWS and SJI standards.

---

[124] Dkt. No. 63-2 at 3, ¶ 5.
[125] Dkt. No. 47 at 12, ¶¶ 36–37.
[126] Dkt. No. 47 at 12, ¶ 37.
[127] Dkt. No. 47-3 at 3, ¶ 6.
[128] *See* Dkt. No. 45-8 at 19:12–13 ("[U]nder SJI, it doesn't really matter what a tack weld looks like.").
[129] *E.g.*, Dkt. No. 47-2 at 25.
[130] Dkt. No. 47 at 13, ¶ 37.

The Court is unpersuaded that Roberto Quintero's opinions are irrelevant or unreliable. The Court **DENIES** Plaintiff Vulcraft's motion to exclude the opinions, testimony, and reports of Roberto Quintero.[131] The Court turns to Plaintiff's third motion to exclude.

3. *Raba Kistner, Inc. and its Employees and Agents Omar Anzaldua, Jr.; Edward Lee;*
   *Oscar Barrera; and Eloy Arredondo*

This subsection is complicated. First at issue is Raba Kistner Consultants Inc.'s "Observation Report Welding Inspection," conducted by Inspector Edward Lee, in which the report describes "an inspection of the structural steel . . . performed in accordance with the AWS D 1.1-2015 Structural Welding Code requirements."[132] Plaintiff seeks to exclude this inspection report as irrelevant and unreliable because, Plaintiff argues, the contract for steel joists between Plaintiff Vulcraft and Defendant Valley Welding provided that the steel joists needed to meet only SJI standards "and that the AWS welding standards were specifically excluded."[133] Defendant first responds that Edward Lee will testify that the steel joists welds were not in accordance with any welding standard at all.[134] Even if Defendant's characterization of Edward Lee's opinion regarding the welds is correct, however, Defendant's response argues past Plaintiff's point. The inspection report at issue does not declare that the welds are unacceptable under any welding standards; the report specifically assesses AWS standards. Therefore, if SJI standards control whether the joists were acceptable or rejectable at the time of Edward Lee's inspection, the inspection report relying on AWS standards is irrelevant at best and misleading at worst. Defendant also responds that Edward Lee will testify that the steel joists did not "meet either his standards for weld quality or SJI standards."[135] But to the contrary, in the cited lines of Mr. Lee's deposition, Defendant's

---

[131] Dkt. No. 47.
[132] Dkt. No. 48-3 at 2.
[133] Dkt. No. 48 at 6, ¶ 8.
[134] Dkt. No. 62 at 22, ¶¶ 74–75.
[135] Dkt. No. 62 at 8, ¶ 22.

counsel asked Edward Lee whether the steel joists met "[his] standards or would [he] interpret that as meeting what [he] believe[s] SJI standards require," to which, after Plaintiff's objection, Edward Lee testified "No."[136] As Plaintiff points out, Edward Lee was responding to a "flawed compound question" that did not reveal whether Edward Lee was referring to "his own standards, SJI standards, or both."[137] Edward Lee's testimony does not reflect that he clearly formed a relevant opinion as to whether the joists met SJI standards. On this score, Defendant lacks evidence that Edward Lee will offer relevant testimony as to whether the welds at issue met or did not meet SJI standards.

However, whether SJI standards control is a summary judgment issue, as Plaintiff remarks in its motion to exclude.[138] The Court must therefore briefly assess which inspection standard or standards control to determine whether Edward Lee's inspection report is irrelevant or unreliable because it uses an impertinent inspection standard. Plaintiff argues in its motion for summary judgment that only SJI standards are relevant because the parties' contract excluded any other standard.[139] Plaintiff Vulcraft's "Terms and Conditions of Sale" provide that the joists will conform to SJI standards.[140] Defendant Valley Welding, via Amador Requenez's deposition, conceded that the relevant contract provided that the steel joists would meet *only* SJI welding standards.[141] Defendant responds that contract law excuses him from the contractual qualification that only SJI standards will apply "because Vulcraft first breached the terms of its contract with Valley Welding by providing steel joists that were not in compliance with SJI and AWS standards."[142] But the evidence Defendant cites of Plaintiff's breach does not support his assertion.

---

[136] Dkt. No. 62-1 at 58, 57:12–16.
[137] Dkt. No. 67 at 3, ¶ 4.
[138] Dkt. No. 48 at 6 n.27 (citing Dkt. No. 45).
[139] Dkt. No. 45 at 19, ¶¶ 67–68.
[140] Dkt. No. 45-2 at 48, ¶¶ 10, 13–14.
[141] Dkt. No. 45-1 at 49:3–9.
[142] Dkt. No. 64 at 22, § B (citing *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004)).

In the cited lines of Defendant's witness Roberto Quintero's deposition, he testified that some welds he inspected "complied with SJI, just not AWS," and that, of the welds he inspected, he did not hold the opinion that they all failed to meet SJI standards.[143] If Plaintiff Vulcraft delivered SJI-compliant joists in accordance with its contract, it thereby did not breach its contract. The Court is unpersuaded that Defendant is excused from the qualifications of the parties' steel joist contract because of Plaintiff's (alleged) preceding breach. Moreover, the parties' contractual damages limitation is a distinct contractual term that functions independently of and does not depend on the contractual terms for performance.[144]

Without convincing evidence or argument that SJI standards had been rendered ineffectual, the Court enforces the parties' contractual term that the steel joists at issue needed to conform to SJI welding standards.[145] Edward Lee conceded that he did not conduct his inspection per SJI standards,[146] and his inspection report reflects the same.[147] Moreover, Edward Lee conceded that his inspection using AWS standards differed methodologically from a proper inspection conducted under SJI standards. Specifically, Edward Lee testified that he did not make a determination with respect to the "length of the required design weld . . . for purposes of looking at piping porosity" which would be a prerequisite determination to ascertain "whether or not the weld complied with SJI."[148] Importantly, Edward Lee testified that he would not declare, and would defer to Plaintiff on, whether the joists at issue met the SJI standards.[149] This testimony renders Defendant's argument that Edward Lee would testify that the joists at issue did not meet *any* welding standard

---

[143] Dkt. No. 59-9 at 27, 107:3–17.
[144] *See* Dkt. No. 68 at 13, ¶ 28.
[145] *See* Dkt. No. 45-2 at 46, ¶ 5.
[146] Dkt. No. 48-4 at 24:18–22.
[147] *See* Dkt. No. 48-3 at 2.
[148] Dkt. No. 48-4 at 71:6–14.
[149] *Id*. at 72:19–22.

suspect at best.[150] Accordingly, the Court agrees with Plaintiff that Edward Lee's report, testimony, and opinion regarding whether the steel joists met the AWS standards is irrelevant and that his inspection methodology is not reliably probative of whether the joists met SJI standards.

In its motion to exclude, Plaintiff argues for the exclusion of a similar Raba Kistner Consultants Inc. inspection report completed by Oscar Barrera, similarly using only AWS standards.[151] Defendant makes no specific response regarding Oscar Barrera.[152] The Court will exclude Oscar Barrera's report, opinion, and testimony for the same reasons just given.

Plaintiff next argues that the Court should exclude Omar Anzaldua because Defendant failed to timely disclose his expert report despite Defendant's identification of Omar Anzaldua as an expert witness in this case.[153] Defendant makes no specific response regarding Omar Anzaldua.[154] "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[155] The Fifth Circuit considers a litigant's failure to offer justification for why a witness's report was not timely disclosed in accordance with Federal Rules of Civil Procedure 26(a) and 26(e) to be "[s]ignifican[t]," and considers untimely disclosures that may require additional discovery to weigh against permitting evidence.[156] In the absence of any justification whatsoever from Defendant regarding its witness Omar Anzaldua, the Court credits Plaintiff's argument that Defendant is barred by Federal Rule of Civil Procedure 37(c)(1) from using Omar Anzaldua at trial due to Defendant's failure to disclose his expert report in accordance with Rule 26(a)(2)(B).

---

[150] *See supra* note 135.
[151] Dkt. No. 48 at 6 nn.29–30 (citing Dkt. No. 48-2 at 1).
[152] *See* Dkt. No. 62.
[153] Dkt. No. 48 at 9, ¶ 19.
[154] *See* Dkt. No. 62.
[155] Fed. R. Civ. P. 37(c)(1).
[156] *CQ Inc. v. TXU Mining Co. LP*, 565 F.3d 268, 280 (5th Cir. 2009).

With respect to Eloy Arredondo, Plaintiff prays that the Court exclude his testimony.[157] However, Plaintiff devotes only a single introductory paragraph to Eloy Arredondo and addresses him nowhere else in Plaintiff's motion.[158] Defendant does not address Eloy Arredondo at all.[159] The Court is thus left with Plaintiff's skeletal and implied argument that the Court should exclude Eloy Arredondo because Defendant failed to provide his curriculum vitae and his expert report despite disclosing him as an expert witness.[160] Lacking virtually any substantive information regarding Eloy Arredondo, the Court nevertheless concludes that his testimony should be excluded for the same reasons that Omar Anzaldua's testimony will be excluded. Namely, Defendant's failure to timely disclose Eloy Arredondo's expert report and failure to speak a word in his defense results in Defendant's witness's exclusion.

In sum, the Court **GRANTS** Plaintiff Vulcraft's motion to exclude the opinions, testimony, and reports of Edward Lee, Oscar Barrera, Omar Anzaldua, and Eloy Arredondo.[161] These four witnesses' opinions, testimony, and reports will be excluded from the evidence in this case.

The Court now turns to Plaintiff's fourth and last motion to exclude.

### 4. *Simon Solorio, P.E.*

Plaintiff Vulcraft moves to exclude Simon Solorio's reports, opinions, and testimony because he relies entirely on the Raba Kistner inspection reports without doing any of his own investigation or inspection.[162] Defendant responds that one expert may rely on another.[163] However, "[e]xpert evidence based on a fictitious set of facts is just as unreliable as evidence based

---

[157] Dkt. No. 48 at 10, § III.
[158] *Id.* at 2, ¶ 2.
[159] *See* Dkt. No. 62.
[160] Dkt. No. 48 at 2, ¶ 2 (citing Dkt. No. 48-1 at 1, ¶ 1).
[161] Dkt. No. 48.
[162] Dkt. No. 49 at 6, ¶¶ 10–11.
[163] Dkt. No. 62 at 21, ¶ 72 (citing *Anderson v. Gonzalez*, 315 S.W.3d 582, 587 (Tex. App.—Eastland 2010, no pet.) ("An expert may rely on the opinions of other individuals who have rendered reports or diagnoses.")).

upon no research at all. Both analyses result in pure speculation. . . . [T]estimony [is] properly excluded on this ground."[164] Because the Court, in the preceding subsection, excluded all Raba Kistner inspection reports, Simon Solorio's reliance thereupon is not competent or reliable. Defendant also argues that Simon Solorio relied on David Day,[165] but Mr. Solorio testified that Mr. Day simply told him that the joists were not adequate and that any further questions about their adequacy vel non would have to be directed to Mr. Day because "[h]e has the experience."[166] Mr. Solorio testified that he personally lacked "experience determining if the welds were okay or adequate."[167] Importantly, Simon Solorio testified as follows:

> Q. [by Plaintiff's counsel] Okay. Did you personally make any determination whether or not the welds on the joists complied with AWS D1.1?
>
> A. [by Simon Solorio] No.
>
> Q. Did you personally make any determination whether the welds on the joists complied with SJI welding standards?
>
> A. No.
>
> Q. And I think as we talked about earlier, you don't really know what the differences between those two standards are?
>
> A. Correct.[168]

The evidence indicates that Simon Solorio does not possess a relevant or reliable opinion on whether the joists at issue complied with SJI welding standards.

Defendant, however, also responds that Simon Solorio determined that the welds at issue were structurally deficient, so his opinion did "not need to rely on any welding standard."[169] However, again, Defendant argues past Plaintiff's point because Simon Solorio's opinion letter

---

[164] *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996)

[165] Dkt. No. 62 at 21, ¶ 72.

[166] Dkt. No. 62-3 at 23:15–20.

[167] *Id.* at 23:2–4.

[168] Dkt. No. 62-3 at 16:6–17.

[169] Dkt. No. 62 at 20, ¶ 71; *see* Dkt. No. 62 at 14–15, ¶ 51.

"indicates that the welds do not meet the contract document requirements of AWS D1.1."[170] Expert opinions concerning AWS standards, or even concerning generic structural integrity without reference to any welding standards, are irrelevant to whether Plaintiff Vulcraft breached its contract by failing to deliver SJI-compliant steel joists or Defendant Valley Welding breached its contract by failing to pay for SJI-compliant steel joists.

Even if Simon Solorio's opinion that the welds are structurally deficient was relevant, it is unreliable. Simon Solorio based his opinion on the Raba Kistner report.[171] But as Plaintiff points out, no Raba Kistner report opines on the structural integrity of any joist.[172] Defendant Valley Welding does not challenge this argument or point to any relevant Raba Kistner finding on structural integrity.[173] Simon Solorio's opinion that the joists are structurally deficient, therefore, is not supported by any substantial evidence.[174]

For all of the foregoing reasons, the Court **GRANTS** Plaintiff Vulcraft's motion to exclude the opinions, testimony, and reports of Simon Solorio. Simon Solorio's opinion, testimony, and reports will be excluded from the evidence in this case.

Having decided all of Plaintiff's motions to exclude, the Court now turns to Defendant's motion to exclude[175] and Plaintiff's response.[176]

## III. DEFENDANT VALLEY WELDING'S MOTION TO EXCLUDE EVIDENCE

### a. Analysis

---

[170] Dkt. No. 49-2 at 1.

[171] *Id.* ("Based on RK draft report, in my professional opinion, the steel joists do not meet the requirements of the contract documents because the welded connections are structurally deficient.").

[172] Dkt. No. 49 at 7, ¶ 13 (citing Dkt. No. 49-2).

[173] *See* Dkt. No. 67 at 4–5, ¶ 9; Dkt. No. 62.

[174] *See Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("An expert's opinion must be supported to provide substantial evidence . . . . In the context of admissibility of expert testimony, this court has noted that '[i]f an opinion is fundamentally unsupported, then it offers no expert assistance to the jury.'"); *supra* note 91.

[175] Dkt. No. 51.

[176] Dkt. No. 59.

    *1.  Julian Hamilton*

Defendant Valley Welding moves to exclude three of Plaintiff Vulcraft's witnesses, the first of which is Julian Hamilton.[177]  Julian Hamilton "was engaged by Vulcraft to conduct an inspection of welds in steel joists shipped to a project in Pharr, Texas to ensure the welds complied with the applicable contract specifications and Steel Joist Institute ('SJI') specifications."[178] Defendant first challenges Julian Hamilton's qualifications, arguing that he lacks education and experience.[179]  Plaintiff argues that Julian Hamilton has plentiful education and experience.[180]  Mr. Hamilton's résumé discloses that he has numerous certifications, including "AWS CWI # 08011011," "ICC/ICBO Structural Steel and Welding Inspector," and "Hobart Institute of welding Technology Training" certifications, and that he has worked in numerous quality control capacities in which his job duties involved welding inspections.[181]  Defendant points out, however, that Julian Hamilton lacks experience with SJI welding standards and that the first time he read the Steel Joist Institute standards was in preparation for this litigation.[182]  Defendant belabors this point.[183] Plaintiff responds that weld inspectors are trained on a variety of codes and standards, such as AWS and SJI, and that a certified welding inspector is qualified to inspect any welding standard because the "different codes simply determine how much of a particular weld defect is allowable before the weld is considered rejectable."[184]  In his deposition, Julian Hamilton testified that in his inspection industry, an inspector is called upon to inspect using numerous standards depending on the job.[185]  Mr. Hamilton testified that he is qualified to inspect any code and that he is unaware of

---

[177] Dkt. No. 51 at 1, ¶ 1.
[178] Dkt. No. 59-1 at 5.
[179] Dkt. No. 51 at 2, ¶¶ 3–6.
[180] Dkt. No. 59 at 3, ¶¶ 4–6.
[181] Dkt. No. 59-1 at 10–12.
[182] Dkt. No. 51 at 3, ¶¶ 6–8 (citing Dkt. No. 51-1 at 9, 35:3–10).
[183] *Id.* at 5–6, ¶¶ 16, 18.
[184] Dkt. No. 59 at 5–6, ¶¶ 17–19.
[185] Dkt. No. 51-1 at 11, 43:9–44:4.

any SJI-specific certification.[186] Mr. Hamilton further testified that, with respect to all welding standards:

> there's nothing different except the criteria that is acceptable and not acceptable in any of these defects. There's not a special defect that doesn't -- that happens on bar joists that doesn't happen throughout the whole welding industry. These are all defects. It's just different acceptance criterias for those defects that are present that you're looking for. So all welding has these defects. It's just the acceptable amount or the allowable amount before it's considered a reject in any weld.[187]

The Court is essentially called upon to judge whether Julian Hamilton's general unfamiliarity with SJI standards (in light of his familiarity with other welding standards) renders him unqualified to opine on whether joists met SJI standards. But "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."[188] The Fifth Circuit has rejected the argument that an expert must be a specialist in the area under consideration to offer admissible testimony.[189] While Mr. Hamilton's prelitigation unfamiliarity with SJI standards may impair his credibility, it does not render his testimony inadmissible. The Court holds that Julian Hamilton is sufficiently qualified by "knowledge, skill, experience, training, or education" to opine on whether inspected welds met the SJI standards.[190]

Defendant next argues that the Court should exclude Julian Hamilton because his opinions are insufficiently factually supported.[191] Specifically, Defendant points out that Mr. Hamilton only

---

[186] *Id.* at 11, 42:16–21.

[187] *Id.* at 30, 117:13–23.

[188] *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

[189] *See Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 624–25 (5th Cir. 2018) (rejecting the argument that expert qualifications must be narrowly tailored to the matter at hand before an expert is qualified to testify); *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195 (5th Cir. 2018) (per curiam) (quotations omitted) ("A lack of specialization should generally go to the weight of the evidence rather than its admissibility, and an expert witness is not strictly confined to his area of practice, but may testify concerning related applications.").

[190] FED. R. EVID. 702.

[191] Dkt. No. 51 at 17, ¶¶ 49–51.

inspected three out of fifty-seven trusses, then extrapolated his opinion about the sufficiency of the three to all of Vulcraft's joists.[192] Plaintiff responds that Mr. Hamilton "was not able to inspect all welds on all steel joists onsite because many of them were stacked up," but that his inspection is nevertheless reliable.[193] Plaintiff further argues that the SJI standard requires only that "*selected* welds shall be inspected visually by the manufacturer,"[194] so Mr. Hamilton's inspection method complied with SJI inspection practices.[195] The Court also notes that the SJI technical digest manual provides that "SJI does not set or establish specific parameters for the amount of sampling and testing and leaves this to the joist manufacturer."[196]

In his expert report, Julian Hamilton describes inspecting only the "weld on steel joist mark numbers T5-1," T5-3, T6-2, T6-1, and T4.[197] During his deposition, Mr. Hamilton conceded that he only inspected three steel joists, leaving most joists uninspected.[198] Mr. Hamilton further testified that he "cannot say that all the roof trusses are acceptable to the purchase order requirements and meet the SJI weld specifications,"[199] in contrast to his expert report which concluded that "the welds on the Roof Trusses / Joists provided by Vulcraft are acceptable to the Purchase Order requirements and meet the SJI weld specifications."[200] Nevertheless, as Plaintiff points out, SJI-compliant inspections need not select a minimum number or percentage of welds to be valid inspections. Weld quality may be designated "acceptable" under SJI standards even if only selected welds are inspected.[201] Accordingly, even if Defendant is correct as a general matter

---

[192] *Id.*; *accord id.* at 7, ¶ 20.
[193] Dkt. No. 59 at 8, ¶¶ 26–27.
[194] Dkt. No. 59-7 at 54, ¶ 1 (emphasis added), *quoted in* Dkt. No. 59 at 13, ¶ 51.
[195] Dkt. No. 59 at 23, ¶¶ 77–78.
[196] Dkt. No. 59-7 at 57.
[197] Dkt. No. 51-2 at 8.
[198] Dkt. No. 51-1 at 14–15, 56:13–57:7.
[199] *Id.* at 29, 113:23–114:2.
[200] Dkt. No. 51-2 at 8.
[201] Dkt. No. 59-7 at 54.

that inspecting only three out of fifty-seven joists furnishes insufficient information to extrapolate a conclusion,[202] the applicable inspection standards do not necessitate additional rigor.[203] Unlike in Defendant's cited case in which the expert at issue made numerous unsubstantiated assumptions,[204] Julian Hamilton's testimony is admissible because it complies with SJI inspection standards.

However, Mr. Hamilton, upon cross-examination, has fully repudiated the unqualified conclusion in his expert report which states that the "the welds on the Roof Trusses / Joists provided by Vulcraft are acceptable to the Purchase Order requirements and meet the SJI weld specifications."[205]   Accordingly, the Court holds that such conclusion is inadmissible as unreliable—it is not the product of Julian Hamilton reliably applying his own principles and methods to this case.[206] The Court **GRANTS IN PART** Defendant's motion to exclude Julian Hamilton[207] to the extent Plaintiff seeks to present testimony from Mr. Hamilton that all "the welds on the Roof Trusses / Joists provided by Vulcraft are acceptable to the Purchase Order requirements and meet the SJI weld specifications."[208] The remainder of Defendant's motion to exclude Julian Hamilton is **DENIED**.

The Court turns to the second witness.

## 2. Adam Kushner

---

[202] See Dkt. No. 51 at 17, ¶ 51.

[203] See Dkt. No. 59 at 23, ¶ 77 (quotations omitted) ("The SJI Technical Digest 8, which is included in Mr. Hamilton's report, provides that only selected welds be inspected visually, whereas AWS standards requires [sic] all welds be visually inspected.").

[204] See Moore v. Int'l Paint, L.L.C., 547 F. App'x 513, 516 (5th Cir. 2013) ("Moore testified that he always used a respirator while painting, but it *sometimes* became clogged after an hour of painting. He also testified that when his respirator became clogged, he would get a new one during lunch. [The expert's] analysis assumed that Moore's respirator *always* failed within one hour and that he never obtained a replacement respirator."), *cited in* Dkt. No. 51 at 17, ¶ 51.

[205] Dkt. No. 51-2 at 8.

[206] See FED. R. EVID. 702(d).

[207] Dkt. No. 51.

[208] Dkt. No. 51-1 at 29, 113:23–114:2;  Dkt. No. 51-2 at 8.

Defendant first argues that Plaintiff's witness Quality Assurance Supervisor Adam Kushner lacks "specialized knowledge, skill, experience, training, or education with respect to determining whether the steel joists and trusses at issue in this case conformed to SJI standards."[209] Plaintiff disagrees, citing Adam Kushner's extensive supervisory welding and weld inspection experience.[210]

Adam Kushner has two educational degrees: "an associate of science in engineering science and associate of science in civil engineering technology"[211] and became a certified welding inspector in 2018.[212] He became Plaintiff Vulcraft's quality assurance supervisor in November 2019 and began supervising twelve inspectors.[213] He familiarized with applicable SJI welding standards in November 2019[214] and has done his own inspections on steel joist welds at least once a week since then.[215] Defendant chiefly objects that Mr. Kushner does not have other or additional licenses, degrees, or training,[216] but the evidence before the Court establishes that Mr. Kushner has sufficient specialized knowledge to opine on SJI weld inspections.[217]

Defendant next argues, similar to Defendant's argument in the preceding subsection, that Adam Kushner inspected too few welds or joists to extrapolate his opinion that "all of the steel joists and trusses are SJI compliant."[218] Defendant claims that there is an analytical gap between Mr. Kushner's inspection and his opinion.[219] However, Mr. Kushner's actual testimony is that he "examined a lot of steel joists" and did not know "if it was most or less" than the total number of

---

[209] Dkt. No. 51 at 20, ¶ 57.
[210] Dkt. No. 59 at 19, ¶ 67.
[211] Dkt. No. 51-6 at 2, 7:22–24.
[212] *Id*. at 2, 8:11–13.
[213] *Id*. at 4, 15:9–17.
[214] *Id*. at 8, 30:2–24.
[215] *Id*. at 7, 27:12–25.
[216] *See* Dkt. No. 51 at 9, ¶¶ 26–28.
[217] *See supra* notes 188–189.
[218] Dkt. No. 51 at 20, ¶¶ 58–59; *see id*. at 10–11, ¶ 31.
[219] *Id*. at 22, ¶¶ 64–65.

joists that Plaintiff Vulcraft delivered.[220]  In any event, again, SJI standards differ from AWS standards in that, under SJI, only "selected welds" need to be inspected (in contrast to "all welds"),[221] and SJI standards provide no minimum quantity or percentage of welds or joists that must be examined to ascertain "Acceptable Weld Quality."[222]  Adam Kushner's opinion regarding the welds' acceptable quality is not inadmissible; his inspection methodology complied with SJI inspection standards.  To the extent Defendant moves to exclude Adam Kushner's opinions or testimony, the motion is **DENIED**.

The Court now turns to the last witness.

### 3. Thad Chapman

Defendant first seeks to exclude Thad Chapman as a procedural matter, arguing that Plaintiff failed to disclose Thad Chapman consistent with Federal Rule of Civil Procedure 26(a)(2).[223]  Plaintiff responds that its disclosure did comply with the Rule.[224]

Federal Rule of Civil Procedure 26(a)(2)(C) requires witnesses who are not "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," such as Thad Chapman, to give a written disclosure that states the witness's anticipated subject matter "on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify."  To satisfy Rule 26(a)(2)(C), the disclosure "must state opinions, not merely topics of testimony . . . [a]nd the disclosure must contain at least a summary of the facts upon which the opinions are based. But the requirement of a summary may be satisfied by an abstract,

---

[220] Dkt. No. 51-6 at 19, 74:8–9.
[221] Dkt. No. 59-7 at 58, tbl. 8-1.
[222] Id. at 54, ¶ 1.
[223] Dkt. No. 51 at 23, ¶¶ 67–69.
[224] Dkt. No. 59 at 27, ¶¶ 87–89.

abridgement, or compendium of the opinion and facts supporting the opinion."[225] The Court does not, however, require undue detail.[226]

Plaintiff agrees that its entire Rule 26(a)(2)(C) expert disclosure regarding Thad Chapman was as follows:

> Mr. Chapman is the General Manager of Vulcraft – Nebraska and was formerly the Engineering Manager of Vulcraft – Texas. Mr. Chapman participated in the site inspection on August 3, 2020 where he inspected the joists welds of certain steel joists delivered to the Project. Mr. Chapman will offer testimony that the joist welds complied with the Steel Joist Institute specifications.[227]

Although an abbreviated disclosure, the Court does not find that Plaintiff's expert disclosure failed to comply with Rule 26(a)(2)(C). The disclosure included the subject matter on which the witness will present evidence (whether the "joist welds complied with the Steel Joist Institute specifications") and included a summary of the witness's opinions and the facts upon which they were based (that the joist welds complied with SJI standards, based on Thad Chapman's August 3, 2020 inspection). Because the disclosure "summarize[s] the opinions to which [the witness] will testify and the facts underlying the opinions," Defendant's motion to exclude Thad Chapman because of an insufficient expert disclosure is not meritorious.[228]

Defendant next argues that Thad Chapman lacks sufficient expertise in welding inspections to offer an expert opinion.[229] Defendant's argument borders on the frivolous. Mr. Chapman was a trained welder and has taken "continuing education courses on SJI standards" throughout his thirteen-year career.[230] As Defendant acknowledges, Mr. Chapman "has a bachelor of science in civil and environmental engineer and a master of science of engineer [sic]" and is a licensed

---

[225] *Everett Fin., Inc. v. Primary Residential Mortg., Inc.*, No. 3:14-CV-1028-D, 2017 WL 90366, at *2 (N.D. Tex. Jan. 10, 2017) (citations and quotations omitted).
[226] *Id.* (quoting FED. R. CIV. P. 26 advisory committee's note).
[227] Dkt. No. 59-1 at 3, *quoted in* Dkt. No. 59 at 27, ¶ 87.
[228] *Everett Fin.*, 2017 WL 90366, at *4.
[229] Dkt. No. 51 at 11–12, ¶¶ 33–34.
[230] Dkt. No. 51-7 at 8–9, 32:6–33:23.

engineer.[231]  While Mr. Chapman was never a certified welding inspector and never held a job as a weld inspector,[232] the Court holds that his credentials vel non do not render him inadmissible to offer expert testimony to assist the trier of fact.[233] Defendant may challenge Mr. Chapman's qualifications to offer opinions about the welds at trial.[234]

Defendant last seeks to exclude Thad Chapman "for the same reasons [as Julian] Hamilto[n]," namely that Mr. Chapman only inspected three out of fifty-seven joists.[235] Defendant's argument fails for the same reason.[236] Accordingly, the Court **DENIES** Defendant's motion to the extent it seeks to exclude any of Thad Chapman's opinions or testimony.

In summary, Defendant's motion is **GRANTED IN PART** only to the extent that Julian Hamilton's repudiated conclusion paragraph in his expert report must be excluded. Otherwise, Defendant's motion to exclude expert testimony is **DENIED**.[237] The Court now turns to the next evidentiary issue before considering summary judgment.

## IV. Plaintiff's Motion to Strike Defendant's Affidavit and Errata Sheet

On November 8, 2021, Plaintiff filed the instant motion to strike Defendant's deposition errata sheet and one of Defendant's affidavits.[238] Plaintiff filed its motion four days after Defendant filed its response brief to Plaintiff's motion for summary judgment which relies in part on two of Defendant Valley Welding's affidavits and his deposition errata,[239] all of which were signed on November 1, 2021 (after discovery had closed and after the Court's October 14th dispositive

---

[231] Dkt. No. 51 at 11, ¶ 33.
[232] Dkt. No. 51-7 at 9, 33:24–34:4.
[233] *See supra* notes 188–189.
[234] *See supra* notes 81–82.
[235] Dkt. No. 51 at 25, ¶ 74.
[236] *See supra* notes 203 and 222 and accompanying text.
[237] Dkt. No. 51.
[238] Dkt. No. 66.
[239] *See infra* text accompanying note 420.

motion deadline[240]). Although Plaintiff's motion to strike was filed after Plaintiff's motion for summary judgment was submitted to the Court for consideration,[241] the Court must address Plaintiff's motion to strike before considering summary judgment because it attacks the available evidence before the Court under Federal Rule of Civil Procedure 56(c).[242] The Court turns to its analysis.

### a. Legal Standard

When considering whether to grant summary judgment, the Court cannot consider evidence that would be inadmissible at trial,[243] such as affidavits or declarations founded on hearsay[244] or outside the personal knowledge of the declarant[245] or irrelevant evidence[246] or unauthenticated documents.[247] Therefore, an opposing litigant may timely move to strike (or simply object to[248]) an affidavit or declaration that does not measure up to the requisite

---

[240] *See* Dkt. No. 24.

[241] *See* LR7.3.

[242] *See* FED. R. CIV. P. 56(c) (providing that a motion for summary judgment must be supported by evidence in the record and that a party may object to inadmissible evidence).

[243] *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 387–88 (5th Cir. 2009) (quotation omitted) ("The admissibility of evidence is governed by the same rules, whether at trial or on summary judgment.").

[244] *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 510 n.5 (5th Cir. 2001) (citing *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995)).

[245] *See Burton v. Banta Glob. Turnkey Ltd.*, 170 F. App'x 918, 923 (5th Cir. 2006) (citing FED. R. CIV. P. 56(e) and *Cormier v. Pennzoil Expl. & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992)); *Amie v. El Paso Indep. Sch. Dist.*, 253 F. App'x 447, 451 (5th Cir. 2007) (quoting *El Deeb v. Univ. of Minn.*, 60 F.3d 423, 428 (8th Cir. 1995)) ("Affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge."); *Pedraza v. Jones*, 71 F.3d 194, 197 (5th Cir. 1995) (affirming the striking of an affidavit because the affiant "possessed no personal knowledge" of the relevant mental condition); *Town of Abita Springs v. U.S. Army Corps of Engineers*, 153 F. Supp. 3d 894, 907–08 (E.D. La. 2015) (holding that a witness is not competent to testify to the perceptions, beliefs, or motivations of others); *cf. Richardson v. Oldham*, 12 F.3d 1373, 1379 (5th Cir. 1994) ("The district court's ruling would be well taken if Jones was asserting that Harrell *actually used* illegal searches, but Jones's affidavit merely states that *Jones believed* Harrell's tactics were unlawful.").

[246] *Perez v. Tex. Dep't of Crim. Just., Inst. Div.*, 395 F.3d 206, 210 (5th Cir. 2004) (citing FED. R. EVID. 401).

[247] *Johnson v. Spohn*, 334 F. App'x 673, 677 (5th Cir. 2009).

[248] *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012) (per curiam) (holding that a litigant may simply object to material it argues is inadmissible); *see* FED. R. CIV. P. 56(c)(2); 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE – CIVIL § 56.91 (4th ed.).

standards.[249] Failure to timely object or move to strike permits the Court to rely on uncontradicted averments.[250] Affidavits and declarations must meet strict standards,[251] but need not internally prove the admissibility of the statements contained therein.[252] A witness who has personalized knowledge of facts based on the witness's personal perception may swear to those facts[253] and the witness's affidavit may not be excluded or stricken because of gaps in knowledge.[254] For example,

---

[249] *Auto Drive-Away Co. of Hialeah v. Interstate Com. Comm'n*, 360 F.2d 446, 448–49 (5th Cir. 1966).

[250] *See Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 383 (5th Cir. 1987) (citing *In re Teltronics Servs.*, 762 F.2d 185, 192 (2d Cir. 1985)); *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 531 (5th Cir. 1992) ("On a motion for summary judgment, the district court should disregard only those portions of an affidavit that are inadequate and consider the rest."); *cf. S. Concrete Co. v. U.S. Steel Corp.*, 394 F. Supp. 362, 380–81 (N.D. Ga. 1975) ("While the court may strike or disregard the inadmissible portions of such affidavit not in conformity with the rule and consider the rest of the affidavit, the entire affidavit may be disregarded if inadmissible matter is so interwoven or inextricably combined with the admissible portions that it is impossible, in the practical sense, to separate them."), *aff'd*, 535 F.2d 313 (5th Cir. 1976). *But see* William W. Schwarzer, Alan Hirsch, & David J. Barrans, *The Analysis and Decision of Summary Judgment Motions A Monograph on Rule 56 of the Federal Rules of Civil Procedure*, 139 F.R.D. 441, 482 (1992) (footnote omitted) ("Courts have occasionally bypassed the rule forbidding consideration of inadmissible evidence on a motion for summary judgment on the ground that the movant did not object. To deny summary judgment because of such evidence is to equate the movant's failure to object with a waiver of the objection at trial. There is no basis for doing so, because making an objection at the time of the motion is not required to preserve the objection for trial.").

[251] *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) (citation omitted) (holding that Federal Rule of Civil Procedure 56(e)'s "requirement of personal knowledge by the affiant is unequivocal, and cannot be circumvented. An affidavit based merely on information and belief is unacceptable"); *Smith v. Consol. Recreation & Cmty. Ctr.*, 131 F. App'x 988, 989–90 (5th Cir. 2005) (per curiam) (citing *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988)) ("[T]his submission is not competent summary judgment evidence, because it is not sworn to be true and correct before a public notary or stated to be true and correct under penalty of perjury."); *Watts v. Kroger Co.*, 170 F.3d 505, 508–09 (5th Cir. 1999) (affirming the striking of handwritten, unsworn, and unnotarized statements).

[252] *See Patel v. Tex. Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019) (holding that Federal Rule of Civil Procedure 56(c) "permits a party to support or dispute summary judgment through unsworn declarations, provided their contents can be presented in admissible form at trial"); *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (holding that a proponent may present evidence that is not, in itself, admissible at trial if the evidence could be shown to be admissible at trial); *United States v. Hangar One, Inc.*, 563 F.2d 1155, 1157 (5th Cir. 1977) ("Contrary to the decision of the trial court, it is sufficient if the statements contained in the affidavit are in fact admissible; the affidavit need not contain any affirmative showing of admissibility."). *But see BMG Music v. Martinez*, 74 F.3d 87, 90 n.18 (5th Cir. 1996) (holding that conflicting evidence as to whether the affiant had personal knowledge of crucial facts precluded the court from considering the affiant's affidavit); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (holding that a verified pleading may serve as an affidavit in support of a motion for summary judgment only if it satisfies the affidavit standards, so a verified pleading that did not affirmatively show that the individual was speaking from his personal knowledge was insufficient to grant summary judgment).

[253] *Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002).

[254] *See Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1199 (3d Cir. 1995) ("Given that the witness in question had extensive personal knowledge of plaintiff's plants and the furnaces in question, we concluded that the witness's opinion was rationally based on his personal knowledge and that the witness's inability to state precisely why a furnace was inoperable at a particular time was proper material for cross-examination rather than a basis for inadmissibility.").

"an officer or employee of a corporation may testify to industry practices and pricing without qualifying as an expert" based on that officer's or employee's particularized knowledge.[255]

However, conclusory and self-serving statements in an affidavit do not suffice to defeat summary judgment.[256] "[T]he mere reargument of a party's case or the denial of an opponent's allegations will be disregarded."[257] Importantly, "a plaintiff may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches prior testimony without explanation. This authority stands for the proposition that a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment."[258] Therefore, the "sham affidavit doctrine prevents a party who has been deposed from introducing an affidavit that contradicts that person's deposition testimony without explanation."[259] District courts may refuse to consider contradictory affidavits that are inadequately explained,[260] but should consider affidavits inconsistent with the

---

[255] *Tex. A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 403 (5th Cir. 2003).

[256] *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 n.49 (5th Cir. 2005); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of this provision [Federal Rule of Civil Procedure 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *Ray v. The Geo Grp.*, 547 F. App'x 443, 446 (5th Cir. 2013) (quoting *Sanchez v. Dall./Fort Worth Int'l Airport Bd.*, 438 F. App'x 343, 346–47 (5th Cir. 2011) ("[I]t is well settled that 'a self-serving affidavit, without more evidence, will not defeat summary judgment.'"); *Orthopedic & Sports Inj. Clinic v. Wang Lab'ys, Inc.*, 922 F.2d 220, 225 (5th Cir. 1991) (cleaned up) ("Unsupported affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment."). *But see Spring St. Partners - IV, L.P. v. Lam*, 730 F.3d 427, 441 & n.7 (5th Cir. 2013) (holding that there is nothing wrong with a self-serving affidavit provided that it is adequately supported).

[257] 10B MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2738 (3d ed. 1998 & Supp. Apr. 2021) (citing *Goodloe v. Davis*, 514 F.2d 1274 (5th Cir. 1975)); *see Eguia v. Tompkins*, 756 F.2d 1130, 1136 (5th Cir. 1985) (footnote omitted) ("[The attorney's affidavit] attests to the truth of the facts and allegations contained in the defendants' motion. As to at least one of these facts, it appears that the attorney lacked personal knowledge. We cannot condone the use of such an improper affidavit.").

[258] *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000); *see Winzer v. Kaufman Cty.*, 916 F.3d 464, 472 (5th Cir. 2019) (quotations omitted) ("[A] district court may refuse to consider statements made in an affidavit that are so markedly inconsistent with a prior statement as to constitute an obvious sham."); *Hackett v. UPS*, 736 F. App'x 444, 449 (5th Cir. 2018) (quotation omitted) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.").

[259] *Free v. Wal-Mart La., L.L.C.*, 815 F. App'x 765, 766 (5th Cir. 2020) (per curiam); *see Dizdar v. State Farm Lloyds*, No. 7:14-cv-00506, 2016 WL 2610108, at *4 (S.D. Tex. May 6, 2016) (Alvarez, J.) (quoting *Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 482 (5th Cir. 2002)).

[260] *Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 235 (5th Cir. 2018) (per curiam).

affiant's testimony if the discrepancies are adequately explained.[261] The Court does consider discrepant or conflicting evidence that is not sham[262] and conclusory averments that are obvious and unchallenged.[263]

With respect to deposition errata sheets, Federal Rule of Civil Procedure 30(e)(1)(B) permits "changes in form or substance" to the deponent's testimony so long as the deponent signs "a statement listing the changes and the reasons for making them" within thirty days after being notified that the deposition transcript or recording is available. Federal district courts in the Fifth Circuit have taken at least three different approaches to adjudicating whether an errata sheet which conflicts with or substantively varies the deponent's testimony is admissible at trial or for purposes of summary judgment.[264] The Court of Appeals for the Fifth Circuit has not declared which, if any, of the three approaches district courts are to follow,[265] but has offered two guideposts. The Fifth Circuit does "not necessarily disagree" that a deponent is entitled to substantively change the deponent's testimony with an errata sheet under Rule 30(e).[266] However, "[a]lthough clients do sometimes make substantive missteps in deposition testimony which may be corrected with an errata sheet, attorneys may not use an errata sheet to push a case to trial where the client no longer adheres to the allegations supporting the claim."[267] In summary, for the reasons stated by the

---

[261] *Free*, 815 F. App'x at 766 (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980)); *see Axxiom Mfg. v. McCoy Invs.*, 846 F. Supp. 2d 732, 750 (S.D. Tex. 2012) (Rosenthal, J.) (quoting *EBC, Inc. v. Clark Bldg. Sys.*, 618 F.3d 253, 270 (3d Cir. 2010)) (citing *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010)).
[262] *Winzer*, 916 F.3d at 472 (quoting *Kennett-Murray Corp.*, 622 F.2d at 893).
[263] *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978) (citing *Munoz v. Int'l All. of Theatrical Stage Emps.*, 563 F.2d 205, 214 (5th Cir. 1977)).
[264] *See Hernandez v. Rush Enters.*, 336 F.R.D. 534, 535–36 (E.D. Tex. 2020) (collecting cases); *Mata v. Caring For You Home Health, Inc.*, 94 F. Supp. 3d 867, 871–72 (S.D. Tex. 2015) (Crane, J.) (describing the three approaches).
[265] *See Tex. Disposal Sys. v. Fcci Ins. Co.*, 854 F. App'x 576, 580 n.7 (5th Cir. 2021) (not reaching the issue); *Reed v. Hernandez*, 114 F. App'x 609, 611 (5th Cir. 2004) (not reaching the issue).
[266] *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 480 (5th Cir. 2012).
[267] *Id.* (citing *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1281–82 (11th Cir. 2010)).

Southern District of Texas[268] and the Eastern District of Texas[269] and the Southern District of Mississippi[270] and others, this Court agrees with the majority approach that, while substantive changes to testimony in an errata sheet are permissible, they must adhere to the allegations supporting the proponent's claim and they must be adequately explained beyond conclusory assertions to prevent sham errata changes from precluding a deserved summary judgment.

### b. Analysis

#### 1. Deposition Errata Sheet

In Plaintiff's motion to strike, Plaintiff asserts that Defendant Valley Welding's affidavit contradicts Defendant's deposition testimony.[271] Therefore, the Court must first assess what Defendant's deposition testimony actually is and whether it has been properly modified by Defendant's deposition errata sheet pursuant to Federal Rule of Civil Procedure 30(e).

Plaintiff first asserts that Defendant failed to "sign a statement within 30 days listing the reasons for making the changes" as required by Rule 30(e)(1)(B).[272] Defendant fails to respond to this argument.[273]

Rule 30(e)(1)(B) allows a deponent only "30 days after being notified by the officer that the transcript or recording is available . . . to sign a statement listing the changes and the reasons for making them." In this case, Plaintiff's counsel deposed Defendant Valley Welding entirely on September 23, 2021.[274] The deposition officer's Rule 30(f)(1) certificate is dated September 27th

---

[268] *Mata v. Caring For You Home Health, Inc.*, 94 F. Supp. 3d 867, 872 (S.D. Tex. 2015) (Crane, J.) ("[A] party cannot use Rule 30(e) to make substantive, contradictory changes to deposition testimony, at least when supported only by *pro forma,* conclusory reasons such as 'to clarify the record.'").
[269] *Hernandez v. Rush Enters.*, 336 F.R.D. 534, 535–36 (E.D. Tex. 2020).
[270] *Riley v. Ford Motor Co.*, No. 2:09-CV-148-KS-MTP, 2011 U.S. Dist. LEXIS 81889, at *10–11 (S.D. Miss. July 26, 2011).
[271] *E.g.*, Dkt. No. 66 at 5, ¶ 8.
[272] Dkt. No. 66 at 22, ¶ 24.
[273] *See* Dkt. No. 70 at 19, ¶¶ 39–41.
[274] Dkt. No. 45-1 at 1.

and indicates that Defendant seeks to review the transcript under Rule 30(e)(1)(A).[275] Defendant subsequently signed and entered his errata sheet on November 1st, thirty-five days later.[276] "Rule 30(e)'s thirty-day clock begins to run when the party is notified by the court reporter that transcript is available for review, *not* when the party or deponent physically receives the transcript from the court reporter."[277] The Fifth Circuit has affirmed the exclusion of an untimely errata sheet, emphasizing that "Rule 30(e) does not provide any exceptions to its requirements."[278] The Court holds that Defendant's errata sheet was substantially untimely in violation of Rule 30(e) and should be stricken.

Plaintiff additionally argues that Defendant's "Errata contains substantive, contradictory changes to his deposition testimony without explanation and should be struck."[279] Defendant responds that his errata sheet's variation of his testimony *is* explained.[280]

In the first sample, Defendant testified that he has done nearly one hundred jobs with Plaintiff Vulcraft,[281] and that Vulcraft "[a]lways" sends its standard written exclusions and qualifications on each job.[282] Later, Defendant also testified that no one at Vulcraft specifically told him that the steel joists would be provided per the project specifications or to AWS welding standards.[283] In his deposition errata, Defendant seeks to change his testimony to:

---

[275] *Id.* at 158–59.
[276] Dkt. No. 66-2 at 4.
[277] *EBC, Inc. v. Clark Bldg. Sys.*, 618 F.3d 253, 266 (3d Cir. 2010) (collecting cases).
[278] *Reed v. Hernandez*, 114 F. App'x 609, 611 (5th Cir. 2004) (per curiam); *see Allamon v. Acuity Specialty Prod., Inc.*, 877 F. Supp. 2d 498, 505 (E.D. Tex. 2012) (discussing the *Reed* holding), *aff'd*, 534 F. App'x 248 (5th Cir. 2013).
[279] Dkt. No. 66 at 21, § II.
[280] Dkt. No. 70 at 19, ¶ 41.
[281] Dkt. No. 45-1 at 35:1–13.
[282] *Id.* at 47:23–48:13 ("Q. On to page 4. And page 4 has the standard exclusions and qualifications of Vulcraft for this job, right? A. Correct. Q. What we see here on page 4, are these common just about to every Vulcraft project? A. Yes. Q. I see these jobs a lot, do a lot of work for Vulcraft and from what I can tell, these standard exclusions and qualifications are included in just about every purchase order they do, right? A. Yes. Q. And that's been your experience on prior purchase orders you had with Vulcraft before as well, right? A. Always.").
[283] *Id.* at 70:18–71:2.

> I am not familiar with the standard exclusions required by Vulcraft for a job like the one involved in this order . . . . I was not aware that Vulcraft specifically excluded AWS welding in its purchase orders. . . . I was told by Amy Castillo that they would design the joists according to the construction drawings and specifications for the project. Those specifications required that the weld on the joists meet AWS weld standards.[284]

In response, Defendant first argues that he did not testify that "he knew that Vulcraft specifically excluded welding as per AWS standards,"[285] but Defendant misapprehends the nature of Plaintiff's contention: that Defendant was familiar with Plaintiff Vulcraft's standard exclusions but his deposition errata claims the opposite. Defendant next confusingly argues that his errata merely clarifies his deposition without contradicting it.[286] Specifically, Defendant cites statements made by Amy Castillo, Simon Solorio, Mitchell Stipek, Dustin Corns, Adam Kushner, Gilberto Hinojosa, and Amador Requenez to argue that Defendant Valley Welding "had a right to rely on the sworn statements of Vulcraft's representative, including Vulcraft's design supervisor, to clarify his testimony through the affidavit that he executed."[287] Defendant utterly misunderstands the nature of deposition errata. Under Rule 30(e), a deponent is permitted to submit errata "if there are changes in form or substance" to the deponent's *own* testimony based on the deponent's *own* knowledge. Defendant cites no authority for the borderline absurd argument that a deponent may retroactively conform their testimony to other evidence, even when the deponent's original testimony directly contradicted that other evidence.[288] If testimony was manipulable in such a fashion at will, it is difficult to imagine that any shrewd attorney's client would be subject to an adverse judgment.

---

[284] Dkt. No. 66-2 at 5, ¶ 2.
[285] Dkt. No. 70 at 21, ¶ 44.
[286] *Id.* ¶ 45.
[287] Dkt. No. 70 at 5–11, ¶¶ 12–18.
[288] *See id.* at 11, ¶ 18.

The only statements that are relevant to Plaintiff's argument are those by Valley Welding himself, and potentially statements made by Amy Castillo. Defendant offers his own misleadingly out-of-context testimony:

> Q. [by Plaintiff's counsel] Okay. And when she [Amy Castillo] told you -- well, let me back up. Did she ever tell you that the job would be supplied per the spec?
>
> **A. [by Defendant Valley Welding] It's a normality, you know, I've been dealing with Vulcraft. I have never gone through something like this. Is [sic] a normality that whatever the architect and the structural engineer requires, that's what they produce.**
>
> **Q. Okay. So you expect –**
>
> **A. This is the kind of relationship that I have with them, you know.**
>
> **Q. You expected Vulcraft to provide the joists per the specs?**
>
> **A. Correct.**
>
> Q. Okay. Did anyone ever at Vulcraft specifically say to you that they would be provided per the spec?
>
> A. No. Can I ask -- can I -- no, it's okay.
>
> Q. All right. So at some point -- well, let me put a finer point on it. Did anyone at Vulcraft ever tell that the joists would be provided per AWS welding standards?
>
> A. No, sir. Nobody called me. Amy did not call me. . . .[289]

Defendant quoted only the bolded portion to argue that his deposition errata merely clarifies his testimony.[290] But in context, it is apparent that Defendant is attempting to mislead the Court about what Defendant testified about what he was told. Defendant unambiguously testified that he *was not told* that the joists would conform to construction specifications, he simply had the opposite impression and is attempting to conform his testimony to his misapprehension in his deposition errata. With respect to Amy Castillo, Defendant never offers any of her testimony in which she states that she told Valley Welding that she or Vulcraft would design steel joists according to the

---

[289] Dkt. No. 45-1 at 70:4–71:2.
[290] Dkt. No. 70 at 10, ¶ 16.

construction specifications.[291] Defendant offers no sturdy rationale for why Defendant the deponent directly contradicts Defendant the affiant. Defendant's failure to give reasons for his changes violates Rule 30(e)(1)(B) and this Court's jurisprudence that unexplained substantive changes are impermissible.[292] The Court need not review every arguable instance in which Defendant's testimony contradicts his errata sheet.

For the independently sufficient reasons that (1) Defendant's deposition errata is untimely under Rule 30(e), and (2) Defendant's substantive changes to his testimony in his errata sheet are unexplained, the Court **GRANTS** Plaintiff's motion to strike to the extent it seeks to strike Defendant's deposition errata sheet.[293] Defendant's deposition errata[294] is **STRICKEN** in its entirety. The Court now turns to Defendant's November 1, 2021 affidavit.

### 2. *Affidavit*

In its motion to strike, Plaintiff first argues that the Court should strike paragraph two of the November 1, 2021 "Affidavit of Amador Requenez" because it directly contradicts his deposition testimony regarding Defendant's personal inspection of the relevant steel joists.[295] Defendant responds that he did testify that he inspected the steel joists and did not contradict himself.[296]

In the relevant testimony, Defendant repeatedly testified that neither he nor anyone at his business inspected the joist welds:

> Q. [by Plaintiff's counsel] All right. You mentioned that Raba-Kistner was the first group to examine the joist welds, correct?
>
> A. [by Defendant Valley Welding] Correct.

---

[291] *See id.* at 6–9.
[292] *See supra* note 268.
[293] Dkt. No. 66.
[294] Dkt. No. 66-2.
[295] Dkt. No. 66 at 5, ¶ 8.
[296] Dkt. No. 70 at 4, ¶¶ 7–8.

Q. Did anyone at Valley Welding make any inspection of the joists welds?

A. No.

Q. Was that something you normally did, or did you leave that to others on the project?

A. I leave to others on the project.[297]

Defendant also testified:

Q. Okay. And you personally did not do any inspections of the joists, right?

A. Right.

Q. You left that to Kistner and others?

A. Correct.

Q. Did anyone else at Valley Welding do any inspections on the welds of the joists?

A. No.[298]

In the purportedly contradictory affidavit, Defendant avers that he "was personally involved in the inspection and the repair of the steel joists" at issue.[299] Defendant also avers that he has "personal knowledge of the amount of time that it took to repair the steel joists to ensure that they met AWS and SJI welding standards."[300]

Defendant argues that his testimony only "relates to the inspection of the steel joists at the time of, or shortly after, the delivery of the steel joists by Vulcraft," based on Plaintiff's counsel's questions,[301] whereas his affidavit refers to Defendant's inspection of the joists immediately before, during, and after their repair by Defendant's crew.[302] Defendant did testify that he hired welders to conduct repairs,[303] but Defendant does not cite testimony in which Defendant describes

---

[297] Dkt. No. 45-1 at 83:15–24.
[298] Id. at 99:4–11.
[299] Dkt. No. 64-4 at 2, ¶ 2.
[300] Id.
[301] Dkt. No. 70 at 4, ¶ 7.
[302] Id. at 5, ¶ 10.
[303] Dkt. No. 45-1 at 138:8.

conducting an inspection around the time of the joists' repair by Defendant's crew.[304] The Court finds Defendant's testimony and affidavit contradictory in this respect. Defendant testified that he *did not personally conduct* any inspections multiple times, with no caveats or qualifications.[305] Defendant's response brief impermissibly attempts to supply explanatory context that is not present in either Defendant's testimony or his affidavit.

However, Defendant points to other testimony in which he testified that he arrived at the construction site and noted that the trusses "did not have a single smooth cut on those [big] angles" but that the welds were first *formally* inspected by Raba-Kistner.[306] Defendant argues that his affidavit "referencing his inspection of the steel joists merely supplements rather than contradicts prior deposition testimony."[307] The Court agrees. Although Defendant testified that he did not personally conduct inspections, his affidavit only states that he "was personally *involved* in the inspection and the repair of the steel joists."[308] No scrutinizing inspection is necessary to note obvious defects or to be technically "personally involved" in inspecting weld deficiencies.[309] While Defendant did not conduct a full or formal inspection himself, his averment that he was "personally involved" in the inspection, and has personal knowledge of the time investment in the joists' repair, is consistent with his testimony that he hired welders and viewed the joists himself.[310]

Furthermore, although Defendant's averment of personal knowledge is brief, Defendant also averred in an unchallenged paragraph that he hired inspector Roberto Quintero to inspect the

---

[304] *See* Dkt. No. 70 at 5, ¶ 10.

[305] *See* Dkt. No. 71 at 3, ¶ 5 ("There is no such limitation in the questions or in the surrounding testimony. Mr. Requenez twice testified that he did not inspect the joists with no indication from the questions, the answers, or the surrounding testimony that his testimony was limited to the time of delivery.").

[306] Dkt. No. 70 at 4, ¶ 8 (citing Dkt. No. 45-1 at 79:4–80:6).

[307] *Id.* at 5, ¶ 11 (quoting *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996)).

[308] Dkt. No. 64-4 at 2, ¶ 2 (emphasis added).

[309] *See supra* text accompanying note 116.

[310] *See supra* note 261.

joists and averment that the joists were thereafter repaired to SJI and AWS weld standards.[311] Defendant has therefore demonstrated the basis for his personal knowledge of the joists' inspection and repair in his affidavit. [312] Even if Defendant failed to internally prove the basis for his personal knowledge, Defendant has pointed to testimony which demonstrates the basis for his personal knowledge, so his affidavit should not be struck.[313] The Court finds Defendant's affidavit adequately explained with respect to paragraph two and **DENIES** Plaintiff's motion to strike to the extent it seeks to strike paragraph two of Defendant's affidavit.

Plaintiff next argues that the Court should strike paragraph three of Defendant's affidavit because the affidavit claims that a representative of Plaintiff, Amy Castillo, told Defendant that the steel joists would meet the project specifications or AWS welding standards, contradicting Defendant's testimony.[314] Defendant's response is identical to the argument Defendant made with respect to his deposition errata concerning what Amy Castillo told him.[315]

Defendant avers, "[a]t the time that I ordered steel joists from [Plaintiff] Vulcraft for the aquatic facility project I spoke to Amy Castillo, employee and agent for Vulcraft. Amy Castillo informed me that Vulcraft would design and manufacture the steel joists according the architect construction drawings and engineer specifications for the aquatic center."[316] Again, Defendant's deposition, in which he testifies that no one at Vulcraft told him that Vulcraft intended to meet the

---

[311] Dkt. No. 64-4 at 3, ¶ 5.

[312] *See Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 374 (5th Cir. 2007) (per curiam) (quoting *El Deeb v. Univ. of Minn.*, 60 F.3d 423, 428 (8th Cir. 1995) ("Thomas argues that it is not necessary for an affidavit to contain an explicit statement that its averments are based on personal knowledge. While this is so, the affidavit must contain information that would allow the court to conclude that the averments are made on personal knowledge. 'Affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge.'").

[313] *See supra* note 252.

[314] Dkt. No. 66 at 6, § b.

[315] *See* Dkt. No. 70 at 21, ¶ 45 (citing Dkt. No. 70 at 5–11, ¶¶ 12–19).

[316] Dkt. No. 64-4 at 3, ¶ 3.

project specifications, directly contradicts his averment.[317] The Court does not find Defendant's explanation of the contradiction to be adequate for the same reason Defendant's deposition errata was inadequately explained.[318] The Court agrees that paragraph three is a sham and **GRANTS** Plaintiff's motion to strike to the extent it seeks to strike paragraph three of Defendant's affidavit.

Plaintiff next argues, moving in numerical order, that the Court should strike paragraph four, concerning Defendant's awareness of the contractual terms.[319] Defendant argues that his affidavit does not contradict his testimony.[320]

The testimony at issue is as follows:

Q. [by Plaintiff's counsel] . . . . What my question is to you, is in relation to No. 5, you've seen a copy of Vulcraft's terms and conditions of sales, right?

A. [by Defendant Valley Welding] Yes.

Q. And that's something they send to you on every job, right?

A. Right.

Q. And that's something that was part of this purchase order, correct?

A. Yes.[321]

Defendant further testified:

Q. Okay. On page 2 are the Vulcraft terms and conditions of sale. Are these the terms and conditions you've seen before?

A. Yes.

Q. And that was what was referenced on page 5 of the purchase order that we were just talking about? Page 5 of Exhibit 3 that we just talked about?

---

[317] Dkt. No. 45-1 at 70:15–71:25 ("Q. You expected Vulcraft to provide the joists per the specs? A. Correct. Q. Okay. Did anyone ever at Vulcraft specifically say to you that they would be provided per the spec? A. No. Can I ask -- can I -- no, it's okay. Q. All right. So at some point -- well, let me put a finer point on it. Did anyone at Vulcraft ever tell that the joists would be provided per AWS welding standards? A. No, sir. Nobody called me. Amy did not call me. . . . Q. Did anyone at Vulcraft ever tell you specifically that the joist would be supplied per AWS welding standards? A. Nobody ever told me anything.").
[318] *See supra* text accompanying note 292.
[319] Dkt. No. 66 at 10, § c.
[320] Dkt. No. 70 at 11, § c.
[321] Dkt. No. 45-1 at 53:6–15.

A. Yeah. Those terms, they always sent them like that, you know.

Q. Okay. And these were part of -- page 2 of Exhibit 4, these terms and conditions were part of your purchase order with Vulcraft, right?

A. Right.[322]

In his affidavit, Defendant avers:

At the time that I was presented with the purchase order for the steel joists, the purchase order did not have a copy of the "terms and conditions of sales." After this lawsuit was filed and we received the documents produced by Vulcraft, did I [sic] see the document containing the "terms and conditions of sales."[323]

Defendant attempts to explain the apparent contradiction between his deposition and his affidavit by confusingly arguing that Defendant Valley Welding was not asked in his deposition about the "Vulcraft Terms and Conditions of Sale," but rather was being asked whether the document being shown to Defendant during his deposition "containing the 'Terms and Conditions of Sales' was part of the purchase order and he answered that it was."[324] Defendant is bizarrely attempting to distinguish two identical documents.[325] Defendant also asserts that the "Terms and Conditions of Sales" document did not contain Defendant's signature or initials, which would be consistent with his affidavit that he did not see Vulcraft's terms and conditions document until after the lawsuit commenced.[326] This is not only unsurprising because the "Vulcraft Terms and Conditions of Sale" document did not contain a signature or initial line unlike the pages of the parties' Quote Confirmation (which references "Vulcraft's Terms and Conditions of Sale"),[327] but does nothing to explain Defendant's contradictory testimony that Defendant *had* seen Vulcraft's

---

[322] *Id.* at 55:6–18.

[323] Dkt. No. 64-4 at 3, ¶ 4.

[324] Dkt. No. 70 at 11–12, ¶ 22 (citing Dkt. No. 70-7).

[325] *Compare* Dkt. No. 45-1 at 55 (citing Dkt. No. 45-2 at 46–48) (discussing the deposition exhibits including the "Vulcraft Terms and Conditions of Sale" document which Defendant testified was part of his purchase order with Vulcraft), *with* Dkt. No. 70-7 (the same "Vulcraft Terms and Conditions of Sale" document).

[326] Dkt. No. 70 at 12, ¶ 22.

[327] *See* Dkt. No. 45-2 at 45–48.

terms and conditions before and that such terms *were* part of Defendant's purchase order with Vulcraft. The Court agrees that Defendant's affidavit directly contradicts his deposition testimony and is inadequately explained. The Court finds that paragraph four is a sham and **GRANTS** Plaintiff's motion to strike to the extent it seeks to strike paragraph four of Defendant's affidavit.

Plaintiff does not challenge paragraph five, instead challenging paragraph six concerning payment obligations. Defendant avers that he "was required under [his] subcontract with D. Wilson Construction"[328] to transfer payments that Defendant received from D. Wilson directly to Plaintiff Vulcraft, and that:

> [t]he money, in the from [sic] of checks, being sent by D. Wilson Construction to [Defendant] Valley Welding Service to endorse legally belonged to Vulcraft and not to Valley Welding Service. Therefore, Valley Welding Service had no choice but to simply forward the checks to Vulcraft after I endorsed them. If Valley Welding Service had refused to send the checks issued by D. Wilson Construction to Vulcraft it would have been in breach of its contract with D. Wilson Construction, or accused of theft of funds belonging to Vulcraft.[329]

Plaintiff points to Defendant's purportedly contradictory deposition testimony, in which Defendant testified that he called D. Wilson's project manager and said "Vulcraft needs to be paid."[330] Plaintiff contends that Defendant's affidavit "attempting to portray the payment as involuntary directly contradicts his deposition testimony where he testified that he requested Vulcraft be paid."[331] The Court disagrees. Defendant's averment that he needed to forward checks received from D. Wilson to Vulcraft does not contradict Defendant's testimony wherein he contacted a D. Wilson representative to request that Vulcraft be paid. The averment and testimony

---

[328] Dkt. No. 64-4 at 4, ¶ 6.
[329] *Id.*
[330] Dkt. No. 66 at 14–16, ¶¶ 14–15 (quoting Dkt. No. 45-1 at 132:15–19).
[331] *Id.* at 16, ¶ 15.

*are* consistent.[332]   The Court **DENIES** Plaintiff's motion to strike to the extent it seeks to strike paragraph six of Defendant's affidavit.

Plaintiff next challenges paragraph nine concerning the time and costs of repair.[333] Plaintiff points to the following purportedly contradictory testimony, which is necessary to recount in full for purposes of the ensuing analysis:

> Q. Do you understand the differences in work that would have to be done to make welds conform to AWS D1.1 standards as opposed to SJI standards?
>
> A. Yes, I do.
>
> Q. Okay. And you understand that making them conform to AWS D1.1 is going to take significantly more time, right?
>
> A. Yes, but every truss had four angles that it required one weld on each angle and it was four welds on a truss. And a full truss had, on SJI, probably 15- or 1,600 welds, you know.
>
> Q. Okay.
>
> A. And AWS was only four welds, so there's a lot of difference where AWS comes in.
>
> Q. The AWS takes longer than SJI though, right?
>
> A. Sir?
>
> Q. Conforming welds to AWS takes longer than SJI though, right?
>
> A. Yes.[334]

In paragraph nine of his affidavit, Defendant avers:

> With respect to the the [sic] amount of time that it took to repair the steel joists to bring them up to AWS and SJI standards I don't believe that in the case of the repairs that were made to the steel joists that were defectively manufactured by

---

[332] *Compare* Dkt. No. 64-4 at 4, ¶ 6 ("Valley Welding Service had no choice but to simply forward the checks to Vulcraft after I endorsed them"), *with* Dkt. No. 45-1 at 134:2–12 ("Q. And each of the joint checks was made jointly payable to both Vulcraft and Valley Welding, right? A. Correct. Q. And then on behalf of Valley Welding, you endorsed each check over to Vulcraft, right? A. Correct. Q. And your intention in endorsing each check was to fully pay Vulcraft for that material it supplied? A. Yes.").

[333] Dkt. No. 66 at 16, § e.

[334] Dkt. No. 45-1 at 119:7–25.

Vulcraft  you can state that it took longer  to do the repairs  to bring them up to AWS weld standards  that [sic] to bring  them up to SJI standards.[335]

Plaintiff asserts that Defendant,  in his testimony,  *"unequivocally* states that it will take significantly more time  to conform  the steel joists  to SJI standards  rather  than  AWS weld standards,"  which contradicts  his later averment  that he does not believe  that more time  will  be necessary  to bring the joists  to AWS weld standards  than  would  be necessary  to bring  the joists  to SJI weld standards.[336]  But Defendant  was not so unequivocal.  The Court finds that Defendant  testifies that, as a general  matter,  conforming  welds to AWS standards  takes longer  than conforming  welds to SJI standards. Defendant's  averment,  in contrast,  specifically  concerns  *repairs*  to *Vulcraft's*  welds and trusses, in which he testified  consistently,  "there's a lot of difference  where AWS comes in."[337] While  there is clearly  space for the parties  to elucidate  Defendant's  opinion  concerning  the time necessary  to repair Plaintiff's  welds, the Court does not find that Defendant's  equivocal testimony is sufficiently  clear to directly  contradict  his later  averment  that he did  not believe  bringing Vulcraft's  joists  to AWS standards  would  have taken longer  than bringing  them to SJI standards. Defendant  may believe  that repairing  the *relevant*  welds to AWS standards  was an exception  to the general proposition  that conforming  welds to AWS standards  takes more time  than conforming welds  to SJI standards.  "When an affidavit  merely  supplements  rather  than contradicts  prior deposition  testimony,  the court may consider  the affidavit  . . . ."[338]

Plaintiff  also attacks Defendant's  paragraph  nine on the basis that Valley Welding  lacks personal knowledge  to state an opinion  on "how many  welds failed  to comply  with SJI standards compared  with how many  failed  to comply  with  AWS standards."[339]  Plaintiff  also contends that

---

[335] Dkt. No. 64-4 at 5, ¶ 9.
[336] Dkt. No. 66 at 19, ¶ 19 (emphasis added) (quotation omitted).
[337] Dkt. No. 45-1 at 119:19–20.
[338] *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996).
[339] Dkt. No. 66 at 20, ¶ 19.

Defendant lacks personal knowledge to aver "that the welds were 'poorly welded, sloppy and failed to meet either SJI or AWS standards.'"[340] Defendant counters that he viewed the trusses himself and identified their poor quality,[341] he testified that the welds at issue were "very sloppy" as compared to other previous Vulcraft welds,[342] and he has "personal knowledge as to what needed to be done to correct the welds."[343] The Court finds that Defendant's testimony establishes his personal knowledge concerning the quality of the welds and the need for their repair. (However, Defendant Valley Welding does not appear to be qualified to testify regarding whether the welds at issue met SJI or AWS standards.[344]) Defendant's affidavit does not lack foundation.[345]

Plaintiff lastly argues that Defendant's affidavit's paragraph nine is based on hearsay.[346] However, "[e]vidence on summary judgment may be considered to the extent not based on hearsay or other information excludable at trial" and an affidavit is not excludable because a portion is inadmissible.[347] Defendant's affidavit's paragraph nine's conclusion is that:

> [W]e would have to grind down and remove the sloppy welds and redo the weld completely up to SJI and AWS welding standards. Because of the very poor workmanship, you cannot divide how much time was spent repair [sic] the weld to SJI standards or AWS standards. Welders worked on each joist simultaneously removing the old welds and repairing the welds to make them acceptable under either standard.[348]

Even if the Court disregards Defendant's averments regarding the opinions of others concerning the poor quality of the steel joists, the Court finds that Defendant still possessed sufficient personal

---

[340] *Id.* ¶ 21 (quoting Dkt. No. 64-4 at 5, ¶ 9).

[341] Dkt. No. 70 at 16, ¶ 32 (quoting Dkt. No. 45-1 at 79:8–20).

[342] Dkt. No. 45-1 at 120:18–121:1.

[343] Dkt. No. 70 at 17, ¶ 33 (quoting Dkt. No. 45-1 at 120:8–13) ("And the type of welds that were put on those angles, we had to remove those welds completely, because they had a lot of pinholes in them that even if I tried to put welds on top of their welds, it would not have passed the inspection. And I would never have done that.").

[344] *See* Dkt. No. 45-1 at 84–87.

[345] *See supra* note 312 and accompanying text.

[346] Dkt. No. 66 at 20–21, ¶ 21.

[347] *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995).

[348] Dkt. No. 64-4 at 5, ¶ 9.

knowledge to aver that the welds must have been redone.[349] The Court **DENIES** Plaintiff's motion to strike to the extent it seeks to strike paragraph nine of Defendant's affidavit.

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion to strike.[350] Defendant's deposition errata is **STRICKEN** in its entirety. With respect to the November 1, 2021 "Affidavit of Amador Requenez," the Court **STRIKES** paragraphs three and four. The Court **DENIES** the remainder of Plaintiff's motion to strike. The Court will not consider the stricken portions of Defendant's affidavit for purposes of summary judgment.

Having ascertained the competent evidence before the Court, the Court now turns to Plaintiff's motion for summary judgment.

## V.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### a.  Legal Standard

Federal Rule of Civil Procedure 56 provides that a court shall award summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[351] One principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses" and should be interpreted to accomplish this purpose.[352]

To earn summary judgment, the movant must demonstrate that there are no disputes over genuine and material facts and that the movant is entitled to summary judgment as a matter of law.[353] "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of

---

[349] *See supra* notes 341–343; *see supra* text accompanying note 310.
[350] Dkt. No. 66.
[351] FED. R. CIV. P. 56(a); *see Bulko v. Morgan Stanley DW Inc.*, 450 F.3d 622, 624 (5th Cir. 2006).
[352] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[353] *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993).

the essential elements of the claim or defense to warrant judgment in his favor."[354] The movant "bears the initial burden of . . . demonstrat[ing] the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case."[355] In other words, a movant may satisfy its burden by pointing out the absence of evidence to support the nonmovant's case if the nonmovant would bear the burden of proof with respect to that element at trial.[356] To demonstrate the absence of a genuine dispute of material fact, the movant must point to competent evidence in the record, such as documents, affidavits, and deposition testimony[357] and must "articulate precisely how this evidence supports his claim,"[358] to "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[359] If the movant fails to meet its initial burden, the motions for summary judgment "must be denied, regardless of the nonmovant's response."[360] Accordingly, the Court may not enter summary judgment by default,[361] but may accept a movant's facts as undisputed if they are unopposed.[362]

If the movant meets its initial burden, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific

---

[354] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986), *quoted in Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002); *accord Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (holding that, if the movant intends to rely on an affirmative defense, "it must establish beyond dispute all of the defense's essential elements").

[355] *Lynch Props. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998).

[356] *Celotex Corp.*, 477 U.S. at 325; *see Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted) ("Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial.").

[357] FED. R. CIV. P. 56(c)(1); *see Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted) ("The movant . . . must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.").

[358] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[359] *Celotex Corp.*, 477 U.S. at 322 (quoting FED. R. CIV. P. 56(c)).

[360] *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted).

[361] *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

[362] *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *see* LR7.4 ("Failure to respond to a motion will be taken as a representation of no opposition").

facts" that demonstrate the existence of a genuine issue for trial.[363] The nonmovant's demonstration cannot consist solely of "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation"[364] and a "mere scintilla of evidence" also will not do.[365] Even if the nonmovant produces more than a scintilla of evidence in its favor, such evidence may be "so overwhelmed by contrary proof" that summary judgment is still proper in favor of the movant.[366] The Court does not need to "credit evidence that is 'blatantly contradicted by the record,' especially by video or photographic evidence."[367] Neither self-serving allegations nor conclusory affidavits can defeat a motion for summary judgment supported by probative evidence.[368] "[T]he nonmoving party must adduce evidence sufficient to support a jury verdict."[369] The Court will countenance only *reasonable* inferences in the nonmovant's favor and will not indulge "senseless" theories or leaps in logic.[370] The nonmovant is "*required* to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."[371] "A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and

---

[363] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) ("[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."); *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991) ("[T]he party responding to a summary judgment motion must support her response with specific, non-conclusory affidavits or other competent summary judgment evidence.").

[364] *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).

[365] *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *accord Germain v. US Bank Nat'l Ass'n*, 920 F.3d 269, 272 (5th Cir. 2019).

[366] *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (quoting *Neely v. Delta Brick and Tile Co.*, 817 F.2d 1224, 1226 (5th Cir. 1987)), *abrogated on other grounds by Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000).

[367] *Malbrough v. Stelly*, 814 F. App'x 798, 804 (5th Cir. 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

[368] *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 227 (5th Cir. 2018); *see Cadena v. El Paso County*, 946 F.3d 717, 725 (5th Cir. 2020) ("[A]ffidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.").

[369] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[370] *See Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 468–69 & n.14 (1992).

[371] *Ragas*, 136 F.3d at 458 (emphasis added).

mandates a finding that no genuine issue of fact exists."[372] Courts "will not assume 'in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts,' and will grant summary judgment 'in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'"[373] The Court is under no duty to sift through the entire record in search of evidence to support the nonmovant's opposition to summary judgment.[374]

"A fact is 'material' if its resolution could affect the outcome of the action,"[375] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[376] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[377] "Although this is an exacting standard, summary judgment is appropriate where the only issue before the court is a pure question of law."[378] The Court does not weigh the evidence or evaluate the credibility of witnesses and views all facts and inferences in the light most favorable to the nonmovant,[379] including "resolv[ing] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[380]

---

[372] *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006); *see Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quotation and alteration omitted) ("When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case."); *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992) ("To avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case.").

[373] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

[374] *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *accord Adams Family Tr. v. John Hancock Life Ins. Co.*, 424 F. App'x 377, 380 n.2 (5th Cir. 2011).

[375] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007).

[376] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006); *see Bache v. Am. Tel. & Tel. Co.*, 840 F.2d 283, 287 (5th Cir. 1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) ("[T]o determine if an issue of material fact is genuine, we must then decide whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'").

[377] *Anderson*, 477 U.S. at 248.

[378] *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991).

[379] *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).

[380] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

### b.  Analysis

#### 1.  Voluntary-Payment Rule

Plaintiff Vulcraft seeks summary judgment on Defendant Valley Welding's counterclaims,[381] arguing first that Defendant has voluntarily paid Plaintiff the full principal amount and so Defendant's counterclaims are all barred by law.[382] Defendant disagrees for five reasons.[383]

The parties agree that Texas law applies to the interpretation of their contract.[384] In Texas, the common law voluntary-payment rule is that money "voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, deception, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability."[385] However, the voluntary payment rule "is a defense to claims asserting unjust enrichment; that is, when a plaintiff sues for restitution claiming a payment constitutes unjust enrichment, a defendant may respond with the voluntary-payment rule as a defense."[386] When the subject matter of a plaintiff's claims "is covered by the parties' contract, the rule would not apply."[387]

In its reply, Plaintiff seeks to invoke the exception "for claims involving overpayments under express contracts."[388] In the case purportedly describing the exception, a plaintiff customer class sued a compact disc seller for assessing late fees to customers' accounts when those customers failed to timely pay for CDs received.[389] The Texas Supreme Court held that the

---

[381] Dkt. No. 45 at 2, ¶ 4.
[382] *Id.* at 17, ¶¶ 62–63.
[383] Dkt. No. 64 at 13, ¶ 31.
[384] *Compare* Dkt. No. 45 at 17, ¶ 63, *with* Dkt. No. 64 at 13, ¶ 32 (both relying on Texas law).
[385] *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 768 (Tex. 2005) (quotation omitted).
[386] *Id.*
[387] *Id.* at 775.
[388] Dkt. No. 68 at 3, ¶ 5.
[389] *Peake*, 178 S.W.3d at 766.

voluntary-payment rule applies "to claims that a late fee like the one here is an illegal penalty."[390]
More specifically, while the Texas Supreme Court held that the voluntary-payment rule would not
apply to any subject matter covered by the parties' contract, the court held that, insofar as the
plaintiff alleges that an "illegal penalty has been assessed, which would operate to void the
contractual late-fee payment obligation, [a] refund suit [will] soun[d] in restitution for unjust
enrichment."[391] Plaintiff points out that the Texas Supreme Court has also rejected a defendant's
claim that it made "good faith overpayments" and held that the defendant's voluntary payments
made with ample but missed opportunity to ascertain exactly what payments are due and clarify
the parties' contractual relationships could not be recovered through a reimbursement claim
because the defendant's claims were barred by the voluntary-payment rule.[392] However, Plaintiff
neglects to mention that this latter case involved the defendant's *unjust enrichment*
counterclaim.[393]

The Court does not read these cases to describe an "overpayments exception" as Plaintiff
urges.[394] Plaintiff's confusing argument appears to be trying to fit the square peg of illegal penalties
(which renders the voluntary-payment rule applicable) into the round hole of "overpayments"
(which Plaintiff argues somehow also renders the voluntary-payment rule applicable), or trying to
transmogrify the square peg of breach of contract claims to fit into the round hole of equity. The
Court is uncertain. In any event, the Texas Supreme Court has repeatedly made clear that the
voluntary-payment equitable defense is simply not available when the matter at hand is a breach

---

[390] *Id.* at 771.
[391] *Id.* at 775.
[392] Dkt. No. 68 at 4, ¶ 7 (citing *Samson Expl., LLC v. T.S. Reed Props.*, 521 S.W.3d 766, 779–80 (Tex. 2017)).
[393] *Samson Expl., LLC v. T.S. Reed Properties, Inc.*, 521 S.W.3d 26, 49 (Tex. App.—Beaumont 2015) ("Samson also asked the trial court to order the Joyce DuJay claimants to reimburse it for a portion of the damages the DuJay–A claimants were awarded in the judgment. According to Samson, the Joyce DuJay stakeholders were unjustly enriched because they benefitted from Samson's decision to attribute all of the production from the well on the Joyce DuJay lease to the Joyce DuJay Unit."), *aff'd,* 521 S.W.3d 766 (Tex. 2017)).
[394] Dkt. No. 68 at 4, ¶ 8.

of contract claim concerning the subject matter of the parties' agreement.[395] The Court holds that the exception Plaintiff seeks to invoke does not exist.

Even if such an exception did exist, the Court holds that Plaintiff's argument for summary judgment would not be within its scope. Plaintiff contends that, "[a]lthough Valley Welding characterizes its claims as sounding in contract, the crux of its claim is for restitution of overpayments."[396] Plaintiff's contention is wholly unsupported by the record. Defendant Valley Welding's live counterclaims are explicitly two counts for *breach of contract* for Plaintiff's alleged failure to construct the steel joists according to project specifications and SJI standards and one count for a breach of contractual express warranty.[397] Plaintiff does not cite any allegation in which Defendant seeks reimbursement for overpayment or asserts an equitable claim. "When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone."[398] The Court **DENIES** Plaintiff's motion for summary judgment to the extent it seeks to dispose of Defendant's counterclaims on the basis of the voluntary-payment doctrine.

    2. *SJI Standards*

Plaintiff next argues that it is entitled to summary judgment because Defendant's "claims for the steel joists welds failure to conform to AWS welding standards are barred by the terms of the contract between Valley Welding and Vulcraft."[399] In its live counterclaim, Defendant alleges that Plaintiff Vulcraft "failed to construct the steel joists according to the plans and specifications prepared for [the Pharr/PSJA Aquatic Facility] and instead constructed steel joists with numerous

---

[395] *See supra* notes 386–387; *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 770 (Tex. 2005) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)) ("Like other equitable claims and defenses, an adequate legal remedy may render equitable claims of unjust enrichment and equitable defenses of voluntary-payment unavailable. . . . [U]njust enrichment [is] inapplicable when parties have express contract covering the subject matter of the parties' dispute.").

[396] Dkt. No. 48 at 4, ¶ 8.

[397] Dkt. No. 55 at 7–9, §§ A–C.

[398] *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).

[399] Dkt. No. 45 at 18, § III.

defects which made 'the welded connectors structurally deficient' in violation of its contract" which caused Defendant to incur more than $316,000 in damages.[400] Defendant also alleges that Plaintiff "failed to construct the steel joists according to the weld standards established by the Steel Joists Institute and instead constructed steel joists with defective welds that did not meet AWS acceptance criteria, SJI acceptance criteria or any industry standard for weld acceptance" which caused Defendant to incur more than $316,000 in damages.[401] Plaintiff argues that the Court should grant favorable summary judgment to Plaintiff on these issues because the parties contracted for steel joists welded to SJI standards only.[402]

Plaintiff's motion is unclear with respect to which counterclaim it seeks summary judgment on. Of course, Plaintiff's motion for summary judgment was filed when Defendant's "First Amended Answer and Counter-Claim" was Defendant's live pleading,[403] which contained a single breach of contract claim based on Plaintiff's alleged failure to meet the construction plans and specifications,[404] rather than Defendant's current live "Second Amended Counter-Claim,"[405] which contains two breach of contract counterclaims and one breach of warranty counterclaim. The Court will review Plaintiff's motion and arguments in light of both of Defendant's breach of contract counterclaims.

If Plaintiff seeks favorable summary judgment with respect to Defendant's first counterclaim for breach of contract, Plaintiff does not bother to identify what the "plans and specifications prepared for [the Pharr/PSJA Aquatic Facility] by the design professionals" actually are.[406] Such plans and specifications may be entirely consistent with SJI standards and the parties'

---

[400] Dkt. No. 55 at 8, ¶¶ 19, 21.
[401] *Id.* at 8–9, ¶¶ 24, 26.
[402] Dkt. No. 45 at 19–20, ¶¶ 68–69.
[403] *Compare* Dkt. No. 45, *with* Dkt. No. 13.
[404] Dkt. No. 13 at 10, ¶ 68.
[405] *See* Dkt. Nos. 54–55.
[406] Dkt. No. 55 at 7, ¶ 17; *see* Dkt. No. 45 at 19, ¶¶ 66–69.

contract. The Court would have to assume that the relevant "plans and specifications" are inconsistent with SJI standards in order to grant Plaintiff favorable summary judgment on this breach of contract counterclaim. Because Plaintiff fails to point to evidence showing that the facility plans and specifications are *inconsistent* with SJI standards—in which case Plaintiff's argument for summary judgment is that Defendant cannot prove that Plaintiff breached the contract by delivering steel joists *consistent* with SJI standards—and because Plaintiff fails to articulate how existing evidence supports its position, the Court holds that Plaintiff fails to carry its burden to show entitlement to summary judgment on Defendant's first counterclaim.[407]

With respect to Defendant's second counterclaim, in which Defendant alleges that Plaintiff "failed to construct the steel joists according to the weld standards established by the Steel Joists Institute and instead constructed steel joists with defective welds that did not meet AWS acceptance criteria, SJI acceptance criteria or any industry standard for weld acceptance,"[408] Plaintiff's argument focuses exclusively on how Defendant has agreed that SJI standards govern the parties' dispute.[409] Rather than address Defendant's burden and lack of supporting evidence, Plaintiff's argument seeking summary judgment against this counterclaim boils down to a request for declaratory judgment on which welding standards apply to this dispute, rather than a direct Federal Rule of Civil Procedure 56 challenge to Defendant's counterclaim that Plaintiff failed to construct steel joists according to SJI standards. To earn summary judgment, Plaintiff must demonstrate that Defendant bears the burden of proof on his breach of contract counterclaim but lacks any evidence to support his claim.[410] Defendant's counterclaim that Plaintiff failed to

---

[407] *See supra* note 358.
[408] Dkt. No. 55 at 8–9, ¶ 24.
[409] *See* Dkt. No. 45 at 19, ¶¶ 67–68.
[410] *See supra* notes 355–356.

construct steel joists *to SJI standards* is not affected by Plaintiff's argument that SJI standards apply, irrespective of the validity of Plaintiff's contention.

Accordingly, the Court **DENIES** Plaintiff's motion for summary judgment to the extent it seeks to dispose of any of Defendant's counterclaims on the basis of which welding standards apply to the parties' dispute.

### 3. Joists' Conformance with SJI Standards

Plaintiff next moves for summary judgment on two related grounds: "(a) there is no admissible evidence that the joists failed to comply with SJI weld standards, and (b) [Defendant] Valley Welding has failed to produce evidence of damages to 'repair' the joists to SJI welding standards."[411] The Court will address each argument in turn.

### i. Joists' Failure to Comply with SJI Standards

Plaintiff's first argument for summary judgment merely retreads its two motions to exclude David Day and Roberto Quintero.[412] Plaintiff argues that, because David Day's and Roberto Quintero's opinions that the relevant steel joists did not conform to SJI standards are Defendant's only admissible evidence that Plaintiff's steel joists were not SJI-compliant, Plaintiff is therefore entitled to summary judgment because Defendant cannot substantiate his counterclaims.[413] Naturally, Defendant's response merely retreads its response in opposition to Plaintiff's motion to exclude.[414]

The Court need not rehash its opinion concluding that both David Day's and Roberto Quintero's testimony and opinions are admissible.[415] Because these witnesses have admissible

---

[411] Dkt. No. 45 at 20, § IV.
[412] *Compare* Dkt. No. 45 at 20–21, ¶ 71, *with* Dkt. Nos. 46–47.
[413] Dkt. No. 45 at 21–22, ¶¶ 73–75.
[414] *Compare* Dkt. No. 64 at 25–26, *with* Dkt. No. 63 at 8–9.
[415] *See supra* Sections II.b.1–2 of this opinion.

opinions that Plaintiff's delivered steel joists did not comply with SJI welding standards as agreed, the Court finds that a genuine issue of material fact precludes summary judgment for Plaintiff on its joists' compliance with SJI standards. The Court **DENIES** Plaintiff's motion for summary judgment to the extent it seeks favorable summary judgment on the issue of Plaintiff's performance under its contract by having delivered SJI-compliant steel joists.

### ii. Cost of Repair to Bring Joists to SJI Standards

To prove Defendant's breach of contract or breach of warranty counterclaims, he must adduce some evidence of damages.[416] Plaintiff attempts to negate this element of Defendant's counterclaims by arguing that Defendant "has presented no admissible evidence of damages for any failure to comply with SJI weld standards."[417] Plaintiff points to the parties' contract in which they agreed to limit damages to the replacement or repair of goods that did not conform to SJI standards.[418] From this, Plaintiff essentially argues that all of Defendant's cost evidence was borne to "modify the joists to conform to AWS weld standards," which the parties did not contract for, so Defendant cannot convert Plaintiff Vulcraft's joists "to another product, AWS welded joists, which they did not order from Vulcraft," and then demand that Plaintiff pay for the conversion.[419] In response, Defendant chiefly relies on two affidavits of Valley Welding to argue that, although Defendant converted its received steel joists to AWS standards, "it was not possible for Valley Welding to separate the costs of bringing the steel joist welds up to SJI standards as opposed to AWS standards" because of the poor quality of the welds, so the Court should not penalize Defendant for mitigating his damages.[420]

---

[416] *Miner Dederick Const., LLP v. Gulf Chem. & Metallurgical Corp.*, 403 S.W.3d 451, 463 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ("Damages are an essential element of a breach of contract claim.").
[417] Dkt. No. 45 at 22, ¶ 76.
[418] *Id.* at 23, ¶ 77 (citing Dkt. No. 45-2 at 48, ¶ 11).
[419] *Id.* ¶ 78.
[420] Dkt. No. 64 at 37–38 (citing Dkt. Nos. 64-4 and 64-5).

The Court will first review Defendant's evidence of his damages, simplify the parties' complex arguments, then ascertain whether Defendant has any evidence of damages to substantiate his counterclaims.

Defendant's evidence of his damages is as follows. Defendant Valley Welding disclosed an invoice during discovery which purportedly describes Defendant's damages. The invoice summarizes numerous costs including payments to welders, costs for welding supplies, and engineering and crane operator charges.[421] The invoice is further substantiated by additional records, such as a spreadsheet breakdown of which welders worked which hours.[422] Defendant importantly avers in an unchallenged paragraph:

> All of the expenses which are included in the Valley Welding Damages documents, including the invoices and other proof of expenses . . . were expenses incurred by Valley Welding Services in order to replace and repair the defective welds on the steel joists manufactured by Vulcraft to ensure that the steel joists were safe and welded **according to AWS and SJI welding standards**. The work performed by my employees, and the expenses incurred, were reasonable and necessary in order to replace and repair the welds on the steel joists manufactured by Vulcraft. Because of the extremely poor and sloppy welding on the steel joists manufactured by Vulcraft, all of the welding on the defective steel joists delivered by Vulcraft had to be completely removed and redone in order to ensure that they were safe and so that they could be certified by the welding inspectors inspecting the steel joists.[423]

The foregoing is the relevant total of Defendant's evidence of damages.

The parties' complex positions may be encapsulated as follows. Plaintiff asserts that it is entitled to summary judgment because Defendant transformed the steel joists to meet the more stringent, more time-consuming, and costlier AWS standards. Because Plaintiff never promised AWS-compliant joists, Plaintiff argues, all of Defendant's evidence of damages incurred in service of meeting the more stringent AWS standards (and thereby necessarily meeting the less stringent

---

[421] Dkt. No. 45-4 at 102.
[422] *E.g. id.* at 103.
[423] Dkt. No. 64-5 at 3, ¶ 3 (bold emphasis added).

SJI standards[424]) is irrelevant to Defendant's true costs of acquiring SJI-compliant joists. Plaintiff argues that, because Defendant lacks evidence of his damages, Defendant cannot prove his counterclaims. The core of Defendant's response is that, in his opinion, he needed to redo the welds completely and bring the joists to AWS standards, which was actually him mitigating damages, and it is impossible to separate the costs of meeting AWS standards versus meeting SJI standards. Therefore, Defendant argues, his evidence of costs bringing the joists to AWS standards *is* his evidence of costs in meeting SJI standards because no one can "divide how much time was spent repair [sic] the weld to SJI standards or AWS standards."[425]

The Court holds that there is a genuine issue of material fact which precludes summary judgment. At the trial of this case, if the jury assents to Defendant's opinion that Defendant's costs incurred to repair deficient welds to AWS standards is equivalent to or inseparable from the costs that would have been incurred to repair deficient welds to SJI standards, then Defendant has sufficient evidence of his damages to sustain his counterclaim. Defendant's opinion is specifically that "one cannot separate the amount of money it takes to bring the joist welds up to SJI standards as opposed to AWS standards"[426] was contained in paragraph nine of his affidavit, which the Court declined to strike[427] and which is admissible as competent summary judgment evidence. Defendant further averred in the same paragraph that he needed to:

---

[424] *See* Dkt. No. 59-9 at 15, 58:11–19 ("Q. Right. So we know 36 -- AWS is a more stringent standard, right? A. Yeah. Q. And we know, on the first line here for tag T20, that 36 welds failed under AWS? A. Right. Q. And it's fair to say we cannot tell from your report how many welds, if any, failed under SJI, right? A. Right. That's correct."); *id.* at 19–20, 76:19–77:8 ("Q. Then it looks like on August 22nd, 2020, page 11, you inspect some additional joists, and you find that these are acceptable, T15 and T21. A. Yes. Q. I think I asked you this earlier. The -- your procedure on each of these reports was identical, right? None of the reports single out AWS welds compared to SJI welds. They're just the welds to repair are a combination of some amount of SJI and some amount of AWS, right? A. Yes. Q. And I guess they would all fail under AWS and some significantly fewer number would fail under SJI, correct? A. Yes, that sounds right."); *id.* at 27, 107:15–17 ("Q. And even those rejects, many of those rejects complied with SJI, just not AWS, right? A. Correct.").
[425] Dkt. No. 64-4 at 5, ¶ 9.
[426] Dkt. No. 64 at 37–38 (quoting Dkt. No. 64-4 at 5, ¶ 9).
[427] *See supra* text accompanying note 349.

grind down and remove the sloppy welds and redo the weld completely up to SJI and AWS welding standards. Because of the very poor workmanship, you cannot divide how much time was spent repair [sic] the weld to SJI standards or AWS standards. Welders worked on each joist simultaneously removing the old welds and repairing the welds to make them acceptable under either standard.[428]

Defendant also points to another, unchallenged affidavit to argue that "Valley Welding had to break down and remove the defective welds made by Vulcraft and fabricate the welds from the beginning, from scratch."[429]

Defendant's averments create a genuine issue of material fact. For example, because Defendant paid additional welders $109,296 to conduct the repairs,[430] if this $109,296 was necessarily incurred to meet *both* AWS and SJI standards, then Defendant has evidence that his damages were at least $109,296. In order to find no genuine issue of material fact under Rule 56(a), the Court would have to discount Defendant's testimony in which he declined to agree with Plaintiff's counsel's assertion that "it's going to cost more to conform welds to AWS than SJI,"[431] ignore Defendant's testimony that "there's a lot of difference where AWS comes in" in ascertaining the time and cost to conform welds to AWS versus SJI standards,[432] and reject both of Defendant's affidavits in which he avers that his costs to bring the welds to AWS standards were inseparable from his costs to bring the welds to SJI standards.[433] The Court must view the facts in Defendant's favor, resolve factual controversies his way, and not discount his credibility.[434] Accordingly, the Court **DENIES** Plaintiff's motion for summary judgment to the extent Plaintiff seeks favorable summary judgment on the issue of whether Defendant has evidence of his damages.

---

[428] Dkt. No. 64-4 at 5, ¶ 9.
[429] Dkt. No. 64 at 37 (citing Dkt. No. 64-5 at 3, ¶ 3).
[430] Dkt. No. 45-2 at 102.
[431] Dkt. No. 45-1 at 120:1–4.
[432] *Id.* at 119:19–20.
[433] *See* Dkt. No. 64-4 at 5, ¶ 9; Dkt. No. 64-5 at 3, ¶ 3.
[434] *See supra* note 379.

### 4.  Consequential and Incidental Damages

Even if Defendant has evidence of his damages, Plaintiff seeks summary judgment on certain damages that Plaintiff claims are "incidental and consequential damages barred by the terms of the parties' agreement."[435]  Defendant responds that his costs were incurred according to the parties' contract to replace or repair the defective joists, and that Plaintiff breached the contract first and cannot enforce the limitation on damages provision.[436]

The Court first notes, again, that Defendant's argument regarding Plaintiff's preceding breach is nonsensical and will not preclude summary judgment.[437]  Turning to the parties' damages limitation, the parties agreed that:

> BUYER'S EXCLUSIVE REMEDY AGAINST VULCRAFT, AND VULCRAFT'S SOLE OBLIGATION, FOR ANY AND ALL CLAIMS, WHETHER FOR BREACH OF CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, SHALL BE LIMITED TO THE REPLACEMENT OR REPAIR OF GOODS THAT FAIL TO MEET [VULCRAFT'S] WARRANTY [that the goods furnished hereunder will conform to the Standard Specifications of the Steel Joist Institute] AT THE TIME OF DELIVERY OR, AT VULCRAFT'S OPTION, A REFUND OF THE PURCHASE PRICE FOR SUCH GOODS. IN NO EVENT SHALL VULCRAFT HAVE ANY LIABILITY FOR DAMAGES IN AN AMOUNT EXCEEDING THE PURCHASE PRICE OF THE GOODS IN QUESTION, NOR SHALL VULCRAFT HAVE ANY LIABILITY FOR SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE OR CONSEQUENTIAL DAMAGES.[438]

Under Texas law,[439] the parties' contract may limit Defendant's "remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts"[440] and the parties may exclude consequential damages unless the exclusion is unconscionable.[441]

Defendant claims damages specifically in the following amounts:

---

[435] Dkt. No. 45 at 24, § V.
[436] Dkt. No. 64 at 41–42, § D.
[437] *See supra* note 144 and accompanying text.
[438] Dkt. No. 45-2 at 48, ¶ 11.
[439] *See supra* note 384.
[440] TEX. BUS. & COM. CODE ANN. § 2.719(a)(1) (West 2021).
[441] *Id.* § 2.719(c).

I. Certified Payroll, 9-pages ------------------$ 77,339.00
II. Architect charges, 6-pages ------------------$ 3,680.50
Ill. Inspection of Welds, 10-pages ------------------$ 16,470.00
IV. Ruiz Erectors, Inc. Additional welders, 7-pages -----------$109,296.00
V. Crane operators & rigger, 3 wks.x40hrs/wk.=120hrs @$180.00/hr to flip joist---$ 21,600.00
VI. Insurance----------------------$ 15,831.00
VII. Fuel Expenses, 43-pages -------------------$ 4,826.00
VIII. Welding Supplies, 26-pages ------------------$ 14,486.00
IX. Engineering charges --------------------$ 52,200.00[442]

Plaintiff argues that every preceding cost except for items I, IV, and IX are incidental or consequential and are excluded by the parties' contract.[443] The Texas Uniform Commercial Code defines incidental and consequential damages as follows:

> (a) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

> (b) Consequential damages resulting from the seller's breach include

>> (1) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

>> (2) injury to person or property proximately resulting from any breach of warranty.[444]

The Texas Supreme Court elaborated, "[d]irect damages are the necessary and usual result of the defendant's wrongful act; they flow naturally and necessarily from the wrong. . . . Consequential damages, on the other hand, result naturally, but not necessarily."[445] Direct and actual damages are those

> which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally; i.e., according to the usual course of things, from such breach of contract itself, or such

---

[442] Dkt. No. 45-4 at 102.
[443] Dkt. No. 45 at 24, ¶ 81.
[444] TEX. BUS. & COM. CODE ANN. § 2.715.
[445] *El Paso Mktg., L.P. v. Wolf Hollow I, L.P.*, 383 S.W.3d 138, 144 (Tex. 2012).

as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach.[446]

The Court will assess each challenged itemized expense.

Plaintiff first challenges item II, the architect charges, as incurred "for inspection of the joists before and after work was performed."[447] The "architect charges" actually appear to be payments made to Raba Kistner Consultants Inc. for their inspection consultations.[448] Inspection costs are specifically excluded as incidental damages.[449] The Court agrees that these expenses are not recoverable under the parties' contract.

Plaintiff next challenges item III, expenditures for the inspections.[450] These are similarly not recoverable as incidental inspection charges.

Plaintiff next challenges item V, expenses for "crane operators to move joists around the jobsite."[451] The specific invoice is for "CraNe Service To Flip BarJoist for welding And welding iNpection [sic]."[452] The Court finds that these are direct damages that flow naturally and necessarily from the wrong.[453] Moving the 30,000-pound trusses[454] indispensably required the equipment and instrumentalities necessary to conduct the welding repairs. The expenses for item V were non-incidental.

Plaintiff next challenges item VI,[455] which Defendant testified was "for workman [sic] compensation insurance"[456] that he would have paid irrespective of Plaintiff's alleged breach.[457]

---

[446] *Mead v. Johnson Grp.*, 615 S.W.2d 685, 687 (Tex. 1981) (quoting *Hadley v. Baxendale* (1854) 9 Exch. 341, 354)).
[447] Dkt. No. 45 at 25, ¶ 83.
[448] *See* Dkt. No. 45-4 at 112–117.
[449] TEX. BUS. & COM. CODE ANN. § 2.715(a).
[450] Dkt. No. 45 at 25, ¶ 83.
[451] *Id.*
[452] Dkt. No. 45-5 at 10.
[453] *See supra* note 445.
[454] *See* Dkt. No. 45-1 at 141:2.
[455] Dkt. No. 45 at 25–26, ¶ 83.
[456] Dkt. No. 45-1 at 147:8–9 (alteration in original).
[457] *Id.* at 148:8–25.

Because Defendant's insurance payments did not arise from Plaintiff's alleged breach, they are not recoverable from Plaintiff.[458]

Plaintiff next challenges item VII,[459] which are fuel expenses that Defendant testified were paid for his "welding trucks to go from [his] shop to the jobsite everyday."[460] Transportation costs are explicitly listed as incidental damages[461] and so are not recoverable from Plaintiff.

Plaintiff lastly challenges item VIII,[462] which are costs for "all the materials used in the replacement and repair of the [allegedly] defective welding on the steel joists manufactured by Vulcraft, including welding supplies such welding rods, welding wire, stick welding and gouging rods for the removal of welds."[463] The parties contracted that Plaintiff would be liable for the "replacement or repair of goods" that failed to conform to SJI standards.[464] "Taking all the reasonable inferences in [Defendant's] favor, [Defendant has] factual support for a finding that the damages resulting from [acquiring materials for the repairs], constitute direct damages which were bargained for as expressly embodied in [Vulcraft's] own warranty provision."[465] The Court holds that materials for repair are more properly characterized as direct damages within the contractually contemplated repair provision than incidental or consequential damages within the contractual exclusion. Materials to perform the repair are obviously a fundamental and indispensable part of conducting a repair.

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for summary judgment.[466] Plaintiff's motion is **GRANTED** to the extent that

---

[458] *See Delhomme Indus., Inc. v. Hous. Beechcraft, Inc.*, 735 F.2d 177, 186 (5th Cir. 1984).
[459] Dkt. No. 45 at 26, ¶ 83.
[460] Dkt. No. 45-1 at 149:9–10.
[461] TEX. BUS. & COM. CODE ANN. § 2.715(a).
[462] Dkt. No. 45 at 26, ¶ 83.
[463] Dkt. No. 64-5 at 5, ¶ 11; *accord* Dkt. No. 45-1 at 149:16.
[464] Dkt. No. 45-2 at 48, ¶ 11.
[465] *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 794 (N.D. Ill. 2016).
[466] Dkt. No. 45.

Defendant's damages for items II–III and VI–VII, that is, architect charges, inspection of welds, insurance, and fuel expenses[467] are not recoverable from Plaintiff and Plaintiff is **AWARDED** favorable summary judgment to the extent Defendant seeks to recover for the same. The remainder of Plaintiff's motion for summary judgment is **DENIED**.

The Court finally turns to Defendant's motion to realign the parties.

## VI. DEFENDANT'S MOTION TO REALIGN THE PARTIES

In his motion, Defendant argues that the Court should realign Defendant Valley Welding as the plaintiff in this case, and Plaintiff Vulcraft as the defendant in this case, "because the subsequent events in the case have significantly shifted the ultimate burden of proof from Plaintiff [Vulcraft] to the Defendant [Valley Welding]."[468] "Proper alignment of parties lies within the discretion of the court."[469]

> It is elemental that the party who files a lawsuit is designated as the plaintiff. This designation is based on the party's burden to prove the claims initially asserted in the lawsuit. A court normally will not realign the parties from their original designations unless the plaintiff no longer retains the burden to prove at least one of its claims or if subsequent events in the case significantly shift the ultimate burden of proof from the plaintiff to the defendant.[470]

Sound reasons to grant realignment include remedying forum shopping and making issues of presentation clearer to the jury at trial, but a sound reason to deny realignment is when both parties bear the burden of proof on different issues in the case.[471] When there is a plaintiff that retains the burden of proof on some issue, realignment is generally inappropriate.[472]

---

[467] *See* Dkt. No. 45-4 at 102.

[468] Dkt. No. 52 at 2, ¶ 5.

[469] *State Farm Fire & Cas. Co. v. Woods*, 129 F.3d 607 (5th Cir. 1997) (per curiam) (citing *Lloyd v. Pendleton Land & Expl., Inc.*, 22 F.3d 623, 625 (5th Cir. 1994)).

[470] *Ericsson Inc. v. Harris Corp.*, No. 3:98-cv-2903-D, 1999 WL 604827, at *2 (N.D. Tex. Aug. 11, 1999).

[471] *Tesco Corp., (US) v. Varco I/P, Inc.*, No. 4:05-cv-2118, 2006 WL 6625915, at *2–3 (S.D. Tex. Nov. 9, 2006) (Rosenthal, J.).

[472] *See Litton Sys. v. VHC, Inc.*, No. 3:98-cv-0357-P, 1998 WL 386164, at *1 (N.D. Tex. July 8, 1998).

Defendant Valley Welding argues that its counterclaims are the focus of this case at this stage,[473] but Defendant does not argue that Plaintiff Vulcraft bears no burden of proof. Plaintiff Vulcraft, for its part, points out that it still bears the burden of proof at least on its claims for interest and attorneys' fees.[474]

For these reasons, the Court holds that there is no good cause to exercise its discretion to realign the parties. The Court **DENIES** Defendant Valley Welding's motion to realign the parties.[475]

## VII.   CONCLUSION AND HOLDING

For the foregoing reasons, the Court enters the following rulings:

- The Court **DENIES** Plaintiff's motion to exclude David Day;[476]

- The Court **DENIES** Plaintiff's motion to exclude Roberto Quintero;[477]

- The Court **GRANTS** Plaintiff's motion to exclude the Raba Kistner representatives Omar Anzaldua, Jr.; Edward Lee; Oscar Barrera; and Eloy Arredondo;[478]

- The Court **GRANTS** Plaintiff's motion to exclude Simon Solorio;[479]

- The Court **GRANTS IN PART** Defendant's motion to exclude Julian Hamilton, Adam Kushner, and Thad Chapman to the extent that Julian Hamilton's indicated conclusion paragraph is inadmissible but **DENIES** the remainder of the motion;[480]

- The Court **GRANTS IN PART** Plaintiff's motion to strike to the extent that Defendant's deposition errata sheet is **STRICKEN** in its entirety and the indicated paragraphs three and four of Defendant's November 1, 2021 affidavit are **STRICKEN** in their entirety but **DENIES** the remainder of the motion;[481]

---

[473] Dkt. No. 52 at 3, ¶ 7.

[474] Dkt. No. 57 at 3, ¶ 6. *Compare* Dkt. No. 1 at 6, ¶ 34 ("Vulcraft is entitled to recover from Valley Welding the principal balance owed of $594,957.56, plus interest at the contractual rate of 12% per annum and all costs of collection including reasonable attorneys' fees."), *with Am. Int'l Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 541 (5th Cir. 1987) (holding that Texas law governs the award of prejudgment interest to a prevailing plaintiff).

[475] Dkt. No. 52.

[476] Dkt. No. 46.

[477] Dkt. No. 47.

[478] Dkt. No. 48.

[479] Dkt. No. 49.

[480] Dkt. No. 51.

[481] Dkt. No. 66.

- The Court **GRANTS IN PART** Plaintiff's motion for summary judgment and **AWARDS** Plaintiff favorable summary judgment to the extent Defendant seeks to recover for items II, III, VI, and VII of his damages itemization for architect charges, inspection of welds, insurance, and fuel expenses respectively, but **DENIES** the remainder of the motion;[482] and

- The Court **DENIES** Defendant's motion to realign the parties.[483]

The remaining issues in this case are whether Plaintiff Vulcraft is entitled to recover under its breach of contract claim against Defendant Valley Welding its "interest at the contractual rate of 12% per annum and all costs of collection including reasonable attorneys' fees."[484] All of Defendant's counterclaims remain pending except to the extent Defendant seeks to recover damages for which summary judgment has resolved Plaintiff's liability. The Court's December 10, 2021 scheduling order remains in effect.[485]

      IT IS SO ORDERED.

      DONE at McAllen, Texas, this 4th day of January 2022.

                                 _____

                                     Micaela Alvarez

                                United States District Judge

---

[482] Dkt. No. 45.
[483] Dkt. No. 52.
[484] Dkt. No. 1 at 6, ¶ 34.
[485] Dkt. No. 73.